**Richmond**

HAYWOOD TYRONE POINDEXTER

v.

COMMONWEALTH OF VIRGINIA

No. 1459-91-2

Decided July 13, 1993

COUNSEL

Craig S. Cooley, for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Haywood Tyrone Poindexter appeals from his conviction for possession of cocaine with intent to distribute. On appeal, he argues that the trial court erred (1) in denying his motion to suppress the cocaine, and (2) in concluding that the evidence was sufficient to support a finding that he acted with the requisite intent to distribute. For the reasons set forth below, we affirm the ruling of the trial court.

I.

On November 22, 1990, State Trooper Millner determined that appellant's car was traveling 13 m.p.h. over the posted speed limit of 55 m.p.h. on Interstate 64 in Henrico County. After stopping the car and determining that appellant had no driver's license or other identification, Millner ran a license check on the name and social security number appellant had given him and discovered that the individual so identified had suffered a license suspension. Millner then asked appellant to get out of the car. When appellant complied, Millner noticed a large bulge in his left front pocket. When appellant said it was just money, Millner thought it was a wallet and asked him to take it out of his pocket. In compliance, appellant quickly removed and replaced a large fold of money, later determined to contain $936. When Millner asked appellant what else he had, appellant put his hand in his right front pocket, began to walk quickly away from Millner, and then pushed his hand down the front of his pants. Afraid that appellant was reaching for a weapon, Millner drew his gun and told appellant to show his hands. When appellant refused to comply, Millner ran up behind him, pushed him to the ground and held him face down.

Millner then rolled appellant over and saw the corner of a clear plastic bag sticking out from appellant's waistband. Suspecting that it con- tained crack cocaine, he pulled it out. Subsequent tests conducted on the twenty-seven individual packets revealed .63 grams of crack co- caine. Although Millner never felt anything that he believed to be a weapon, he testified that appellant's furtive movements and refusal to obey his requests to show his hands caused Millner to fear that appel- lant had a weapon.

After arresting appellant for possession of cocaine, Millner took him to the police station, where he discovered another thirty packets of cocaine containing .76 grams. Although Millner ultimately arrested appellant only for possession of cocaine and issued him a summons for speeding and driving on a suspended license, Millner testified that appellant's earlier inability to produce any identification would have justified his taking appellant into custody and transporting him to the police station in order to ascertain his identity.

At trial, the Commonwealth offered Investigator Hewlett as an ex- pert witness. Although conceding that the quantity of crack cocaine found on appellant could conceivably have been consumed by one ad- dict in a single day, Hewlett testified without objection that the pack- aging involved was consistent with street distribution rather than per- sonal use. Had appellant purchased the cocaine for personal use, testified Hewlett, he would most likely have purchased it in bulk form at about one-fourth the cost for the individual packets.

Prior to trial, appellant moved to suppress the cocaine as the prod- uct of an illegal search. The trial court denied the motion. Appellant moved to strike at the conclusion of the Commonwealth's evidence and again moved to strike at the conclusion of all the evidence at trial. The trial court also denied those motions.

## II.

Appellant contends that the trial court erred in denying his mo- tion to suppress the cocaine on the ground that it was the product of an unconstitutional search and seizure. On appeal, the burden is on appel- lant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress consti- tuted reversible error. *See Fore v. Commonwealth*, 220 Va. 1007,

1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017 (1980). Viewing the evidence in this fashion, we conclude that Officer Millner conducted the challenged search pursuant to a lawful arrest. Initially, Millner was justified in pulling appellant's car over for exceeding the speed limit. When appellant was unable to produce a valid driver's license or any other identification, Officer Millner ran a license check on the name and social security number that appellant had given him and discovered that the person's license had been suspended. Consequently, Officer Millner had probable cause to conclude that appellant was driving in violation of Code § 46.2-301. These circumstances constituted the commission of a crime in the presence of a police officer which, under Code § 19.2-81, gave Officer Millner probable cause to make a warrantless arrest. Appellant then walked away from the officer and appeared to reach into his pants for a weapon. Appellant also refused to show his hands, even after repeated requests from the officer, who had his weapon drawn. The officer then tackled appellant from behind.

■ "Probable cause to arrest must exist exclusive of the incident search. So long as probable cause to arrest exists at the time of the search, however, it is unimportant that the search preceded the formal arrest if the arrest 'followed quickly on the heels of the challenged search.' " *Carter v. Commonwealth,* 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990) (quoting *Rawlings v. Kentucky,* 448 U.S. 98, 111 (1980)) (other citation omitted). In addition, if the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest.[1] *Cupp v. Murphy,* 412 U.S. 291, 295-96

---

[1] Professor LaFave has interpreted *Cupp* to hold at least that:

(i) if there is probable cause for arrest but no formal arrest, and (ii) if the suspect is reasonably believed to be in the actual process of destroying "highly evanescent evidence," then (iii) that evidence may be preserved if this can be accomplished by a search which is "very limited" as compared to a full search of the person.

2 Wayne R. LaFave, *Search and Seizure* § 5.4(b), at 519 (2d ed. 1987) (footnote omitted). He also notes, however,

that a considerably broader rule would be justified.

At a minimum, *Cupp* should be applied so as to permit, when there are grounds upon which a formal arrest could have been made, a more extensive search for any evidence reasonably believed to be in the possession of the suspect which might be unavailable later, either because of future conduct of the suspect or other means.

*Id.* at 519-20.

(1973) (upholding the taking of fingernail scrapings from murder suspect who was not contemporaneously arrested).

■ Although appellant argues that Officer Millner never intended to arrest him for driving on a suspended license — as shown by the fact that Millner later arrested him only for possession of cocaine and issued him a summons for the driving offense — the evidence, when viewed in the light most favorable to the Commonwealth, contradicts this assertion. Millner testified that he planned to take appellant to the Henrico Public Safety Building in order to substantiate his identity, and appellant testified that Millner handcuffed him prior to the search. Both of these facts show Millner's subjective intent to arrest appellant. In spite of this fact, however, the officer's subjective motivations are not dispositive. Rather, "[p]olice actions are to be tested 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.' " *Limonja v. Commonwealth*, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989) (en banc), *cert. denied*, 495 U.S. 905 (1990) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (footnote omitted)); *see also United States v. Smith*, 799 F.2d 704, 708 (11th Cir. 1986) (holding that pretextual arrest is valid as long as evidence shows that "a reasonable officer *would* have made the seizure in the absence of the illegitimate motivation"). In this case, Officer Millner had probable cause to arrest appellant without a warrant *prior* to conducting the challenged search. Accordingly, the cocaine seized was admissible for that reason, making further analysis unnecessary. Therefore, appellant's motion to suppress was properly denied.

## III.

■ Appellant also challenges the sufficiency of the evidence as to whether he acted with the requisite intent to distribute.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987) (citing Code § 8.01-680). In proving intent, various types of circumstantial evidence may be appropriate — evidence concerning

the quantity of drugs and cash possessed, the method of packaging, and whether appellant himself used drugs. *See, e.g., Servis v. Commonwealth*, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988); *Hambury v. Commonwealth*, 3 Va. App. 435, 438, 350 S.E.2d 524, 525 (1986). Viewed in the light most favorable to the Commonwealth, the evidence in this case showed that appellant was carrying fifty-seven individual packets of cocaine totalling 1.39 grams, which Investigator Hewlett testified was inconsistent with personal use. In addition, no other evidence introduced at trial indicated that appellant was a cocaine user. Had appellant *purchased* the drugs in this fashion, testified Hewlett, he would have paid about four times more than if he had purchased them in bulk. Finally, appellant had $936 in cash in his pocket when arrested. We cannot conclude, based on this evidence, that the trial court erred in finding that appellant acted with an intent to distribute the cocaine in question.

For the aforementioned reasons, we affirm appellant's conviction.

*Affirmed.*

Cole, J.,* concurred.

Benton, J., concurring and dissenting.

I concur in the holding that the trial judge did not err in denying the motion to suppress the cocaine. However, I do not join in Part III, and I would reverse the conviction because the evidence does not prove beyond a reasonable doubt that Haywood T. Poindexter possessed the cocaine with the intent to distribute it.

When the Commonwealth's evidence "is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Dukes v. Commonwealth*, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984) (quoting *Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976)). "Where inferences are relied upon to establish guilt, they must point to guilt so clearly that any other conclusion would be inconsistent therewith." *Dotson v. Commonwealth*, 171 Va. 514, 518, 199 S.E. 471, 473 (1938). "There is no stronger presumption afforded than that an accused is presumed to be innocent, which cannot be overthrown except by proof of his guilt be-

---

* Retired Judge Marvin F. Cole took part in the consideration in this case by designation pursuant to Code § 17-116.01.

yond a reasonable doubt." *Id.* at 517, 199 S.E. at 473. "Existence of the intent [to distribute] cannot be based upon surmise or speculation." *Patterson v. Commonwealth*, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975).

The majority's statement that "the evidence in this case showed that appellant was carrying 57 individual packets of cocaine totalling 1.39 grams, which Investigator Hewlett testified was inconsistent with personal use" is based upon a misperception of Hewlett's testimony. Hewlett testified that the amount of cocaine was consistent with personal use, but that "to buy it in this denomination" would not be consistent with "personal use." Upon further questioning, however, Hewlett testified that it was possible that a user would buy the cocaine in the form held by Poindexter. He testified as follows:

Q The quantity that is described there, the 0.76 grams and the 0.63 grams, well within a quantity that an addict, a severe addict could use in the course of one day, right?

A This is the amount you could probably use, yes sir, in the course of one day.

Q An addict could use that in one day?

A Yes sir.

Q And certainly personal use might involve a quantity that would be for more than a single day?

A That's correct.

Q The, the nature of the packaging is the, the total basis for your description that this should — may not likely be for personal use, is that fair to say?

A Yes sir. . . .

\* \* \*

Q And it is also possible, is it not that someone, lets say a trafficker who was in a bind for the money but had already divided it up, but weighed it out and said this is really what I've got, and somebody said, okay, the street value is a hundred and fifty dollars, I bought it in bulk and that's how — that's all I've got and I

want to buy it from you and it could have been sold. That's possible, isn't it?

A That's possible.

Q All right, sir. What you've told this Court is what you think probably occurred, but you cannot exclude the possibility that it was for personal use, can you?

A It's only a professional opinion.

Q All right. Again, my question to you is you have told this court what you think probably would have occurred, but you cannot exclude the possibility that it was done the other way?

A I cannot.

Q All right, sir. And again the quantity is consistent, in terms of the total gross weight of it, is certainly consistent, well consistent with personal use?

A It is.

The record contains neither statements by Poindexter nor evidence of conduct from which an intent to distribute could be inferred. Thus, the evidence in the record did not prove beyond a reasonable doubt that Poindexter intended to distribute the cocaine. Because the evidence did not exclude the reasonable hypothesis that the cocaine was possessed for personal use, I would reverse the conviction.