Present: All the Justices

JOHN DAVID LOVELACE

v. Record No. 981447   OPINION BY JUSTICE CYNTHIA D. KINSER
                                November 5, 1999
COMMONWEALTH OF VIRGINIA

   ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES


   John David Lovelace was convicted of possession of

marijuana and possession with the intent to distribute

cocaine in the Circuit Court of Halifax County.  He

appealed, alleging that the circuit court erred in denying

his motion to suppress evidence that was seized from him

during a search of his person.[1]  The Court of Appeals of

Virginia affirmed the convictions.  Lovelace v.

Commonwealth, 27 Va. App. 575, 500 S.E.2d 267 (1998).  This

Court refused Lovelace's petition for appeal and his

subsequent petition for rehearing.  Thereafter, the Supreme

Court of the United States granted Lovelace a writ of

certiorari, vacated the judgment of this Court, and

remanded the case to this Court for further consideration

in light of its decision in Knowles v. Iowa, 525 U.S. 113,

119 S.Ct. 484 (1998).  Lovelace v. Virginia, ___ U.S. ___,

119 S.Ct. 1751 (1999).  Because we conclude that the search

---

   [1] Lovelace also claimed the evidence was insufficient
to prove he intended to distribute cocaine.  That issue is
not before us.

of Lovelace violated his Fourth Amendment rights, we will reverse his convictions.

FACTS

Deputy Sheriff Shawn Sweeney was on patrol in the Cody area of Halifax County about 10:00 p.m. on August 23, 1996. Sweeney, along with Deputy Sheriff Mike Womack and some other police officers, were conducting a "jump-out" operation. At that time, Sweeney observed the defendant standing on the premises of a car wash/convenience store (the store). Womack had previously observed drug trafficking at that location. He described the area as an "open air drug market."

As Sweeney arrived at the store and got out of his vehicle, he saw Lovelace holding a green glass bottle containing what Sweeney assumed was an alcoholic beverage. According to Sweeney, Lovelace "had the bottle up to his mouth and appeared to be drinking from it." Sweeney told Lovelace to drop the bottle and lie face down on the ground. When Lovelace dropped the bottle, it broke and the pieces were not recovered from the scene.

According to Womack, the defendant was standing at the store "among a couple of guys" with open bottles of beer. Womack testified that the defendant and the other two or three people standing in the store's parking lot were

2

ordered to lie face down on the ground after the officers saw a bottle fly through the air and hit a car.[2]  Although Womack did not see who threw the bottle, he stated that it came from the area where Lovelace was standing.

Womack then approached Lovelace, who was lying on the ground as directed, and asked the defendant his name. Lovelace responded by identifying himself, but remained silent when Womack questioned whether he had any drugs or guns.  When Lovelace did not respond to Womack's questioning regarding drugs or guns, Womack performed a "patdown" of the defendant.  During the "patdown," Womack felt something like a bag in Lovelace's pocket.  Womack admitted that he did not know "if it was a plastic bag or what at that time," but said he felt some lumps and something that was "squooshy."  It was a kind of bag with which he was familiar, and based on his experience, he knew that people sometimes carry drugs in that type of bag.

Although Womack admitted that the object in Lovelace's pocket did not feel like a gun, that he did not know what was in the bag, and that he did not have a search warrant, Womack nevertheless reached into the defendant's pocket and retrieved the bag.  The substance in the bag was later

---

[2] Womack later testified that the bottle hit the car as he was putting Lovelace "down on the ground."

identified through laboratory testing as crack cocaine. The analysis also identified some marijuana.[3]

During the search, Lovelace continued to lie on the ground and did not make any threatening gestures toward the officers. Womack acknowledged that he had not arrested Lovelace and did not have him in custody when he searched Lovelace. Rather, Womack insisted that he was detaining the defendant because of the open containers of beer, the bottle-throwing incident, and the odor of alcohol that he noticed when speaking with Lovelace. However, Womack admitted that he could not determine whether the odor of alcohol was coming from the defendant.

Womack did not actually arrest Lovelace until after he retrieved the bag from the defendant's pocket. Lovelace was then arrested for possession of marijuana and possession with intent to distribute cocaine, but was not charged with any alcohol-related offense.[4] In fact, no one

_____

[3] It is not apparent from the record whether the marijuana was in the bag with the cocaine or was discovered elsewhere on Lovelace's person.

While searching Lovelace, Womack also found $121.00 in a black pouch and $171.30 in the defendant's pocket.

[4] Womack's testimony was unclear with regard to what charges he placed against Lovelace at the scene. However, a magistrate issued warrants for possession with intent to distribute cocaine and possession of marijuana during the early morning hours on August 24, 1996. A grand jury subsequently indicted Lovelace for possession with intent

4

else standing on the premises of the store with Lovelace was charged with any violation of law despite the open bottles of beer that Womack observed.  The other individuals were all released after being identified.

ANALYSIS

Pursuant to the remand order issued by the Supreme Court of the United States, we must consider the constitutionality of the search of Lovelace's person in light of the Supreme Court's decision in Knowles.  Accordingly, we will discuss that decision before addressing the arguments presented by the parties in this case.

Knowles involved an Iowa statute providing that the issuance of a citation in lieu of an arrest "does not affect the officer's authority to conduct an otherwise lawful search."  Iowa Code Ann. § 805.1(4) (West Supp. 1997).  Pursuant to that statute, an Iowa police officer, who had stopped Knowles for speeding, searched Knowles' car after issuing Knowles a citation in lieu of arresting him.  During the search, the officer found a bag containing marijuana and a "pot pipe" under the driver's seat.  The

---

to distribute cocaine.  After Lovelace was found guilty of the marijuana charge in the Halifax County General District Court, he appealed, and both charges were tried together in circuit court.

5

officer subsequently arrested Knowles for violating Iowa laws dealing with controlled substances. Knowles, 525 U.S. at ___, 119 S.Ct. at 486. The Iowa Supreme Court upheld the constitutionality of the search, but the Supreme Court reversed that holding. Id. at ___, 119 S.Ct. at 487.

In Knowles' challenge to the Iowa statute as applied to him, the Supreme Court framed the question presented as "whether such a procedure authorizes the officer, consistent[] with the Fourth Amendment, to conduct a full search of the car." 525 U.S. at ___, 119 S.Ct. at 486. The Court answered that question "no" because neither of the two historical rationales for the "search incident to arrest" exception, i.e., "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial," was sufficient to justify the officer's search of Knowles' car. Id. at ___, 119 S.Ct. at 487. Based on the facts in Knowles, the Court concluded that the threat to the officer's safety was not as great as the threat inherent in the context of a custodial arrest. Id. at ___, 119 S.Ct. at 487. It also determined that Iowa had not shown a need to preserve or discover evidence because no further evidence of excessive speed existed once Knowles was

stopped for speeding and issued a citation.  Id. at ___,
119 S.Ct. at 488.

Although asked to do so, the Court refused to extend
the "bright-line rule" established in United States v.
Robinson, 414 U.S. 218 (1973), to a "search incident to
citation."  Knowles, 525 U.S. ___, 119 S.Ct. at 488.  The
"bright-line rule" allows a police officer to conduct a
full field-type search of the person incident to a lawful
custodial arrest.  Robinson, 414 U.S. at 235.  The Court in
Robinson determined that such a search is permitted as "an
exception to the warrant requirement of the Fourth
Amendment," and is "also a 'reasonable' search under that
Amendment."  Id.  In so holding, the Court stated that

> [t]he authority to search the person incident to a
> lawful custodial arrest, while based upon the need to
> disarm and to discover evidence, does not depend on
> what a court may later decide was the probability in a
> particular arrest situation that weapons or evidence
> would in fact be found upon the person of the suspect.

Id.  In New York v. Belton, 453 U.S. 454 (1981), the
Supreme Court extended the "bright-line rule" to a search
of the passenger compartment of an automobile when such a
search is conducted as "a contemporaneous incident" of a
lawful custodial arrest of an occupant of the automobile.
Id. at 460.  See Glasco v. Commonwealth, 257 Va. 433, 513
S.E.2d 139 (1999).

7

In declining to extend the "bright-line rule" to a "search incident to citation," the Court in <u>Knowles</u> compared a routine traffic stop to a "<u>Terry</u> stop" because such a traffic stop is a "relatively brief encounter," unlike the extended exposure attending an actual custodial arrest. <u>Knowles</u>, 525 U.S. at ___, 119 S.Ct. at 488. However, the Supreme Court recognized that the concern for officer safety is not absent in a routine traffic stop and may justify some additional intrusion. However, by itself, it does not warrant the greater intrusion accompanying "a full field-type search." <u>Id.</u> at ___, 119 S.Ct. at 488.

Summarizing, we have no doubt, based on <u>Knowles</u>, that the <u>Robinson</u> "bright-line rule" does not apply to an encounter similar to a routine traffic stop in which a police officer issues only a citation or summons. Because the nature and duration of such an encounter are significantly different and less threatening than in the case of an officer effecting a custodial arrest, the rationales justifying a full field-type search are not sufficient to authorize such a search incident to the issuance of a citation. When a police officer issues a citation or summons in lieu of a custodial arrest, the officer can nevertheless impose some further intrusions, consistent with the Fourth Amendment, if either historical

rationale for the "search incident to arrest" exception is present. We believe that the scope of these further intrusions is limited to what is necessary to answer the concerns raised by the presence of either historical rationale. In other words, an encounter between a police officer and an individual that is similar to a routine traffic stop and results in the issuance of a citation or summons may involve some degree of danger to the officer or some need to preserve or discover evidence sufficient to warrant an additional intrusion, but it will not necessarily justify a full field-type search.

Having analyzed <u>Knowles</u>, we now turn to the parties' arguments. Lovelace contends that the search of his person violated the Fourth Amendment because he was not subject to a custodial arrest. He asserts that, if he had been charged with drinking an alcoholic beverage in public in violation of Code § 4.1-308, the officer could have issued only a summons pursuant to Code § 19.2-74(A)(2).[5] Continuing, Lovelace argues that neither a concern for

---

[5] Code § 19.2-74(A)(2) provides that "[w]henever any person is detained by . . . an arresting officer for a violation . . . of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, . . . the arresting officer shall take the name and address of such person and issue a summons . . . [and] shall forthwith release him from custody."

officer safety nor a need to preserve or discover evidence existed during his encounter with Sweeney and Womack. Thus, he contends that Womack had no basis upon which to justify the extensive search that he conducted.

The Commonwealth, however, contends that the officers had probable cause to arrest Lovelace for drinking an alcoholic beverage in public and thus could conduct a search incident to arrest. It is the Commonwealth's position that the presence of probable cause for an arrest, rather than an actual custodial arrest, determines the reasonableness of a search. While conceding that Code § 19.2-74(A)(2) generally requires that a suspect be released from custody when charged with a Class 4 misdemeanor, the Commonwealth asserts that a full search incident to arrest is nonetheless justified in that situation because "[a]n officer . . . does not know upon making the arrest whether he will, in fact, be releasing the individual or formally taking him into custody."

With regard to the effect of the decision in Knowles, the Commonwealth first argues that Knowles is inapplicable because Lovelace was, in fact, in custody when Womack searched him. The Commonwealth premises this argument on the language of Code § 19.2-74(A)(2) providing that an individual is released "from custody" after the officer

10

takes the name and address of the person and issues a summons.

In the alternative, the Commonwealth argues that, if Knowles applies to the instant case, both of the historical rationales for a "search incident to arrest" were present. The Commonwealth states that officer safety was a concern because the encounter with Lovelace occurred in an "open air drug market," there were several people assembled on the parking lot of the store, and a bottle had been thrown by someone. The Commonwealth also posits that Womack needed to discover evidence, such as cash register receipts to establish a recent purchase of alcoholic beverages by Lovelace since the bottle he had been holding could not be recovered from the scene. Having conceded at oral argument that it must demonstrate that Womack had a right to conduct a full search incident to arrest in order to prevail in this appeal, the Commonwealth further contends that whenever either of the historical rationales for search incident to arrest is present, an officer can conduct a full field-type search even though only a citation or summons is issued. We do not agree with any of the Commonwealth's arguments.

Initially, we conclude that Knowles is applicable. The encounter between Lovelace and the officers, while not

involving a traffic offense, was nonetheless similar in nature and duration to a routine traffic stop. We reach this conclusion primarily because the initial reason for detaining Lovelace was his alleged commission of a Class 4 misdemeanor for which the issuance of a summons was authorized under Code § 19.2-74(A)(2). Only if Lovelace had failed or refused to discontinue the unlawful act could the officer have effected a custodial arrest and taken the defendant before a magistrate. Code § 19.2-74(A)(2). However, there is no evidence in the record that Lovelace acted in such a manner. The fact that the officers could have issued only a summons for the alcohol-related offense also negates the Commonwealth's argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed Womack to search him. After Knowles, an "arrest" that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search.

Nor do we believe that Code § 19.2-74(A)(2) contemplates a custodial situation equivalent to an actual custodial arrest. Under that statute, a suspect is detained, or in the custody of the police officer, only long enough for the officer to take down the name and

address of the person and issue a summons. One of the reasons that the Knowles Court did not extend the Robinson "bright-line rule" to a "search incident to citation" was because the duration of the encounter between a police officer and a defendant is "relatively brief" when the officer issues a citation. Thus, the threat to officer safety is less.

Next, assuming without deciding that there was a need to discover evidence or a threat to the officers' safety, we conclude that the extent of Womack's search exceeded the scope necessary to accomplish either of those objectives. Once Womack conducted his "patdown" of Lovelace and felt nothing similar to a weapon, any reasonable concern for officer safety was resolved. Likewise, Womack did not testify that he felt something that was evidence related to Lovelace's drinking an alcoholic beverage in public. Instead, he felt a "squooshy" bag. In other words, Womack did not "reasonably believe" that the bag was either a weapon or evidence related to Lovelace's alleged alcohol offense. Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983), cert. denied, 465 U.S. 1104 (1984). Thus, Womack's subsequent reach into Lovelace's pocket to retrieve the "squooshy" bag was not in furtherance of either officer safety or the preservation of evidence.

13

Once Womack satisfied himself that Lovelace did not have a weapon or evidence of an alcohol offense on his person, the officer had no basis to continue his search.  See Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991) (Terry "patdown" must cease once officer determines that individual does not possess weapon).

Based on the Supreme Court's decision in Knowles, we therefore conclude that the search of Lovelace was not consistent with the Fourth Amendment.  Accordingly, the Court of Appeals erred in upholding the circuit court's denial of Lovelace's motion to suppress the evidence obtained during the search.  For these reasons, we will reverse the judgment of the Court of Appeals, dismiss the indictment charging Lovelace with possession with intent to distribute cocaine, and dismiss the warrant charging Lovelace with possession of marijuana.[6]

Reversed and dismissed.

---

[6] In Rhodes v. Commonwealth, 29 Va. App. 641, 513 S.E.2d 904 (1999), the Court of Appeals found a "search incident to citation" unreasonable under the Fourth Amendment, based on the decision in Knowles.  Although the decision in Rhodes was handed down before the Supreme Court of the United States remanded the instant case to this Court, the Court of Appeals acknowledged that, to the extent that its prior decision in Lovelace is inconsistent with the decision in Knowles, "Lovelace is no longer a viable precedent."  Rhodes, 29 Va. App. at 643 n.1, 513 S.E.2d at 905.  While that acknowledgement is correct in

_____

light of our decision today, it does not afford any relief to Lovelace.