COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Duff and Hodges
Argued at Alexandria, Virginia


RONNELL WALLACE

                                        OPINION BY
v.    Record No. 0585-99-2    JUDGE ROSEMARIE ANNUNZIATA
                                         MAY 23, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                  Charles L. McCormick, III, Judge

            James T. Maloney (Joseph D. Morrissey;
            Morrissey & Hershner, P.L.C., on brief), for
            appellant.

            Michael T. Judge, Assistant Attorney General
            (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Appellant, Ronnell Wallace, entered guilty pleas on the

charges of driving under the influence, driving after having

been declared an habitual offender, and possession of cocaine

with the intent to distribute, reserving his right to appeal the

trial court's ruling on his motion to suppress, the issue

presented here.[1]  For the reasons that follow, we affirm.

---

     [1] Wallace was also convicted of assault and battery, which
was among the enumerated bases for appeal in his petition to
this Court.  Although a three-judge panel granted the petition,
Wallace failed to brief the question.  The issue is thus waived.
See Jenkins v. Commonwealth, 244 Va. 445, 423 S.E.2d 360 (1992);
Fitzgerald v. Bass, 6 Va. App. 38, 366 S.E.2d 615 (1988).

BACKGROUND

When an appellate court reviews a trial court's denial of a motion to suppress, the court must view the facts in the light most favorable to the prevailing party below and grant to that party all reasonable inferences that are fairly deducible from the evidence. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). On appeal, we are bound by the trial court's findings of historical fact unless the findings are plainly wrong or without evidence to support them. See McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

In December, 1997, State Police Trooper R.A. Ruiz was traveling west on Route 47, just outside the town limits of South Hill, Virginia, when he observed Wallace traveling in the opposite direction. Ruiz noted that Wallace was driving well below the posted speed limit. Ruiz saw Wallace drift once "to the right-hand side crossing the white line, or the fog line, on the right side of the road," and decided to continue observing Wallace to determine whether he was driving while intoxicated. After Ruiz turned his car to follow Wallace, Wallace accelerated, and Ruiz increased his following speed to match. Wallace then made a right turn without signaling, and Ruiz observed that Wallace continued accelerating as he went through

the turn, as indicated by a "weight transfer" at the rear of the vehicle, the right rear shifting up as the left rear shifted down in the course of the turn.  Ruiz was approximately 400 feet behind the vehicle at this point.  Wallace made "another abrupt turn" without signaling, giving rise again to the weight shift earlier noted.  Wallace was not speeding, however, and Ruiz's vehicle was the only car following Wallace into the turns, some 400 feet away.  There is no evidence that Wallace ever lost control over the vehicle.

Wallace made a third abrupt turn into a private driveway without using a turn signal and turned the vehicle's lights off.  Ruiz, who was two or three houses away from Wallace when he made the turn, pulled into the driveway behind Wallace, activated his emergency lights, exited his cruiser, and approached Wallace's vehicle.

Ruiz determined that Wallace was the operator of the vehicle.  In response to the trooper's request, Wallace produced a registration card for the vehicle but could not produce a driver's license.  When Ruiz asked him his name, Wallace identified himself as "Stevey Edmonds."

Based on the odor of alcohol Ruiz detected in the course of his conversation with Wallace, Ruiz had Wallace step out of his vehicle and sit with Ruiz inside the police cruiser.  There, Ruiz administered a number of field sobriety tests, which

Wallace could not successfully complete. Ruiz also had the state police dispatcher conduct a check on the name provided to him by Wallace, and the dispatcher determined that the license issued to Stevey Edmonds had been suspended. Ruiz decided to conduct further agility tests outside the vehicle. Because Wallace complained of being cold during the tests inside the cruiser, Ruiz offered to retrieve Wallace's coat from his vehicle before performing the agility tests. Wallace agreed, and Ruiz retrieved Wallace's coat from the vehicle. To check for weapons, Ruiz patted down the outside of the coat and felt a hard object in the right-hand pocket. Ruiz retrieved the object to determine if it was a weapon, and found what appeared to be a bag of cocaine powder, crack cocaine and marijuana. Ruiz placed the bag in his pants pocket and returned, with the coat, to the cruiser. Wallace acknowledged the coat belonged to him.

### DISCUSSION

The Commonwealth contends that because Wallace stopped his car before Ruiz activated his emergency lights, Wallace was not "seized" within the meaning of the Fourth Amendment. We disagree. While no Virginia appellate court has addressed this question, a number of our sister states have established that if an officer stops his police cruiser behind a parked vehicle to conduct an investigation and activates his cruiser's flashing lights before he approaches the vehicle, an ensuing encounter

with the vehicle's occupants will be construed as a seizure for Fourth Amendment purposes.  See Lawson v. Maryland, 707 A.2d 947, 951 (Md. Ct. Spec. App. 1998); Oregon v. Walp, 672 P.2d 374 (Or. Ct. App. 1983); Washington v. Stroud, 634 P.2d 316 (Wash. Ct. App. 1981).  "[T]he test for existence of a 'show of authority' is an objective one:  not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."  California v. Hodari D., 499 U.S. 621, 628 (1991); see United States v. Mendenhall, 446 U.S. 544, 554 (1980) (a Fourth Amendment seizure occurs when, in view of all surrounding circumstances, "a reasonable person would not have believed that he was free to leave").  A driver in Wallace's position, with Ruiz's cruiser parked behind him and its emergency lights flashing, would reasonably have believed he or she was not free to leave the scene.  Thus, Wallace was seized within the meaning of the Fourth Amendment.

"'Ultimate questions of reasonable suspicion and probable cause' . . . involve questions of both law and fact and are reviewed de novo on appeal."  McGee, 25 Va. App. at 197-98, 487 S.E.2d at 261 (quoting Ornelas, 517 U.S. at 691).  In performing this Fourth Amendment analysis, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the

inferences drawn from those facts by resident judges and local law enforcement officers."  Id. (citing Ornelas, 517 U.S. at 699).

The trial court found that Wallace's "attempt to elude" Officer Ruiz, viewed in conjunction with other evidence before the court, justified the stop.[2]  We find no error in the court's decision.  "[W]hether [a] stop was justified is dependent upon whether 'the facts available to the officer at the moment of the seizure or the search [would] warrant a man of reasonable caution in the belief that the action was appropriate.'"  Quigley v. Commonwealth, 14 Va. App. 28, 32, 414 S.E.2d 851, 853-54 (1992) (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968)) (internal quotation omitted).  See also Illinois v. Wardlow, 120 S. Ct. 673, 676 (2000) ("[F]light . . . is the consummate act of evasion:  it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

---

[2] The trial court stated its finding as follows:

> Viewing the evidence as a whole, it's not the reasonable articulable suspicion to stop, with the particular -- with respect to what I consider to be driving to elude.  It was the trooper's opinion that this car -- that this defendant was driving to elude.  And . . . the defendant himself admitted that he was driving to elude. . . . So that would confirm, in my view, the officer's suspicion of what he saw.

Wallace contends the trial court erred as a matter of law in finding that his "attempt to elude" was sufficient to justify the stop. He argues that pursuant to Code § 46.2-817, a person is not considered to be "eluding" unless the person has received a "visible or audible signal by a law-enforcement officer." Although Wallace correctly notes that he received no signal to stop and that his conduct did not violate that statute, his behavior was nevertheless sufficient to give rise to a reasonable suspicion of criminal activity. We have previously observed that evasive behavior in the presence of the police is a pertinent factor in determining reasonable suspicion. See Commonwealth v. Eaves, 13 Va. App. 162, 166, 408 S.E.2d 925, 927 (1991) ("Evasive action is a factor which can support an inference of a consciousness of guilt."); see also Wardlow, 120 S. Ct. at 676. The trial court "[v]iew[ed] the evidence as a whole," including Wallace's momentary swerve out of the lane of travel, his initially slow speed followed by sudden acceleration when Ruiz began to follow him, and his "elusive" series of sudden turns made without decelerating, followed by his sudden stop in a residential driveway. This course of conduct, viewed as a whole, was sufficient to "'warrant a man of reasonable caution in the belief'" that an investigatory stop was appropriate. Quigley, 14 Va. App. at 32, 414 S.E.2d at 854 (quoting Terry, 392 U.S. at 21-22). We agree.

We also find no merit to Wallace's further argument that the trooper's search of the coat and ultimate retrieval of the evidence used to convict him was illegal. At the time Ruiz instructed Wallace to return with him to the state police cruiser, Ruiz had detected the odor of alcohol on Wallace, providing Ruiz with reasonable suspicion that Wallace was driving while intoxicated in violation of Code § 18.2-266. He was therefore authorized to conduct field sobriety tests on Wallace to determine whether such a violation had taken place. In the course of conducting this investigation, Ruiz discovered that the driver's license issued to "Stevey Edmonds," the name by which Wallace had identified himself, was expired. Ruiz thus had probable cause to arrest Wallace for driving in violation of Code § 46.2-301. When Wallace asked Ruiz to retrieve Wallace's coat, Ruiz was thus entitled to conduct a pat-down search for weapons. "[I]f the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest." Poindexter v. Commonwealth, 16 Va. App. 730, 733-34, 432 S.E.2d 527, 529 (1993) (citing Cupp v. Murphy, 412 U.S. 291, 295-96 (1973) (footnote omitted). "So long as probable cause to arrest exists at the time of the search . . . it is unimportant that the search preceded the formal arrest if the arrest 'followed quickly on the heels of the challenged search.'" Id. at 733, 432 S.E.2d at 529 (quoting Carter v.

- 8 -

<u>Commonwealth</u>, 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990)) (additional citation omitted).  The search of Wallace's coat was therefore lawful.

For these reasons, we affirm the convictions.

<u>Affirmed</u>.