COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Senior Judge Coleman
Argued at Richmond, Virginia


LINWOOD G. BYRD

                                   MEMORANDUM OPINION[*] BY
v.       Record No. 2327-03-1             JUDGE SAM W. COLEMAN III
                                          JANUARY 11, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

James S. Insley for appellant.

Josephine F. Whalen, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


Linwood Byrd (appellant) contends the trial court erred in denying his motion to suppress,

arguing that the "search of [his] person was an unreasonable search and seizure in violation of"

the Fourth Amendment. We disagree and hold that the search was reasonable and lawful.

Accordingly, we affirm the trial court.

BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that on the night of October 18, 2002, Deputy Sheriff

John R. Mattis saw a car driven by appellant "in the left-hand lane, northbound." Mattis

"observed the vehicle weave over the centerline - - that would be weaving to the right three

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

times, and it also had a [license] plate light out." The car contained one passenger, Sterling Merritt. After Mattis activated his emergency lights and siren, the car "went off the road on the left shoulder, came back onto the road, went off the left side shoulder again, [and] started to slow down." Mattis "was under the impression that [appellant was] about to stop, and then the vehicle sped up and shot over to the right-hand side, across two lanes of traffic, and came to a stop abruptly in the right shoulder of the road." The occupants of the car appeared to be "scrambling to conceal something."

When the car stopped, the passenger, Merritt, "bailed out of the vehicle," and Mattis' partner detained him. Mattis approached the driver's side and spoke with appellant. Mattis "observed a crack pipe in the back floorboard, behind the passenger's seat." Appellant told Mattis that his license had been revoked. Mattis directed appellant to exit the car and placed him in handcuffs.

When Merritt exited the car he appeared to be having a seizure, which the officers determined required medical attention. After medics took care of Merritt, Mattis advised appellant of his Miranda rights, which appellant acknowledged he understood. Mattis then searched appellant and "recovered crack cocaine in a tissue from his front, right pants pocket." Mattis testified that "[i]t's been my experience that – with a – with a crack user, when there's drug paraphernalia around, in general, there's usually drugs nearby." Mattis "asked [appellant] about the cocaine, and he stated that he picked it up off the floor of a trailer that he was at earlier where Mr. Merritt was selling cocaine."

"Due to the circumstances with Mr. Merritt," Mattis obtained the pertinent personal data about appellant and "told him I would be getting a warrant for him" and "decided to go ahead and release" him so that he could attend to Merritt. Mattis drove appellant "to [a] gas station on

- 2 -

[his] way to the hospital to go deal with Mr. Merritt." Mattis testified that he would have arrested appellant at the scene had Merritt not required hospitalization.

Mattis subsequently requested that the Commonwealth's attorney obtain indictments. On November 19, 2002, the grand jury issued true bills charging appellant with possessing cocaine and operating a vehicle after his license had been revoked or suspended.

The trial court found the stop "perfectly reasonable and legal under the facts." In overruling appellant's suppression motion, the trial court explained:

> Identification shows that the Defendant is driving revoked. That is a class one misdemeanor. He could have arrested him at that point. He did not take him into custody but gave him his Miranda warnings as though he were arresting him. So you've got a search incident to arrest.

After a trial on the merits, appellant was convicted of possessing cocaine and driving on a suspended license. He appeals the convictions, contending that the trial court erred in denying his motion to suppress.

## DISCUSSION

"The burden to establish that the denial of the motion to suppress constituted reversible error rests with the defendant." King v. Commonwealth, 39 Va. App. 306, 308, 572 S.E.2d 518, 519 (2002) (citations omitted). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review *de novo* the trial court's application of legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Ornelas, 517 U.S. at 699; Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).

- 3 -

"A warrantless search is per se unreasonable and violative of the Fourth Amendment of the United States Constitution, subject to certain exceptions." Tipton v. Commonwealth, 18 Va. App. 370, 373, 444 S.E.2d 1, 3 (1994) (citation omitted). However, searches made by law enforcement officers incident to arrest are permitted as an exception to the warrant requirement. See United States v. Robinson, 414 U.S. 218, 235 (1973). In Robinson, the United States Supreme Court noted that the authority to conduct a search incident to arrest is based on the need to disarm the suspect in order to take him into custody and the need to preserve evidence for later use at trial. See id. at 234.

"A warrantless arrest of an individual in a public place for a felony . . . is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003). "'[I]f the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest.'" Wallace v. Commonwealth, 32 Va. App. 497, 505, 528 S.E.2d 739, 742-43 (2000) (quoting Poindexter v. Commonwealth, 16 Va. App. 730, 733, 432 S.E.2d 527, 529 (1993)). "Probable cause to arrest must exist exclusive of the incident search." Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990).

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which [the officer] has reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975). "Probable cause is assessed by considering the totality of the circumstances pertaining to the facts known to the officer at the time." United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

In Pringle, the United States Supreme Court considered whether police had probable cause to arrest Pringle, a front seat passenger in a car containing two other men, for possessing cocaine found during a search of the car. 540 U.S. at 370.

> Pringle was one of three men riding in a Nissan Maxima at 3:16 a.m. There was $763 of rolled-up cash in the glove compartment directly in front of Pringle. Five plastic glassine baggies of cocaine were behind the back-seat armrest and accessible to all three men. Upon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money.

Id. at 371-72. Finding that the officer had reasonable cause to believe all three occupants in the car had knowledge of and exercised control over the drugs, the Supreme Court explained:

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

Id. at 372.

The Court cited for support its decision in Wyoming v. Houghton, 526 U.S. 295 (1999), a case in which the Court "noted that 'a car passenger – unlike [a customer in a public place] – will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.'" Pringle, 540 U.S. at 373 (quoting Houghton, 526 U.S. at 304-05). In Pringle, the Court held

> it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

Id.

Here, Mattis conducted a traffic stop after observing erratic and dangerous driving and an equipment violation. The driver slowed, sped up, crossed two lanes to the opposite shoulder and

- 5 -

finally stopped. During these suspicious maneuvers, Mattis saw appellant and his passenger make furtive movements as if trying to conceal something. After appellant stopped the car, Mattis approached and saw a pipe, which he later identified as the type used to smoke crack cocaine, in plain view on the floorboard behind the passenger seat. As in Pringle, appellant and his companion "were in a relatively small automobile, not a public [place]." Id. Mattis could reasonably infer a common enterprise between appellant and his passenger based upon the erratic driving, the presence of the pipe in plain view and the furtive movements as if trying to conceal something. Thus, it was "an entirely reasonable inference from these facts that any or all . . . of the occupants had knowledge of, and exercised dominion and control over, the cocaine." Id. at 372. Based on the totality of circumstances, Mattis had probable cause to arrest appellant and was authorized to search him incident to an arrest.

Appellant also argues that Mattis' decision to arrest him several weeks later rather than at the time of the stop was an additional circumstance demonstrating "there was not enough to justify a search of his person and that it was unreasonable and unconstitutional." Because the passenger, Merritt, required emergency medical treatment, Mattis did not arrest appellant at the scene. Instead, he preserved the evidence and obtained an indictment a month later. As long as probable cause to arrest exists at the time of the search, it is unimportant that a formal arrest occurs later. See Cupp v. Murphy, 412 U.S. 291, 294 (1973) (upholding search even though defendant "was not formally 'arrested' until approximately one month later"); Wallace, 32 Va. App. at 505, 528 S.E.2d at 742-43; Poindexter; 16 Va. App. at 733, 432 S.E.2d at 529. Because Mattis possessed sufficient probable cause reasonably to believe that appellant was committing a felony at the time he searched appellant, his failure to arrest appellant at that time did not invalidate the search.

Furthermore, our review of the case law appellant cited in support of his argument that the search was unreasonable and unconstitutional does not support either proposition under the facts of this case. In Sheler v. Commonwealth, 38 Va. App. 465, 470, 566 S.E.2d 203, 205 (2002), Alexandria police officers went to Maryland to ask Sheler to accompany them back to Virginia in order to investigate the report his car had been stolen. The car had been identified as the getaway car in a recent robbery. Id. at 469, 566 S.E.2d at 205. During the trip, which we held was not a seizure, an officer asked to see Sheler's boots. Id. at 470, 566 S.E.2d at 205. As a result, the officer found pieces of glass that were later found to match the glass at the crime scene. Id. The officer then seized Sheler's pants as well. Id. We reversed and remanded, holding that a search of Sheler's boots was unreasonable under the circumstances. Id. at 477-78, 566 S.E.2d at 208-09. Sheler's report that his car had been stolen did not provide probable cause to arrest him, therefore, the officer was not authorized to perform an incident search. Here, Deputy Mattis possessed sufficient probable cause to support an arrest and an incident search.

In Deer v. Commonwealth, 17 Va. App. 730, 732, 441 S.E.2d 33, 34 (1994), a police officer stopped Deer for speeding. Deer appeared nervous. Id. at 732, 441 S.E.2d at 35. After issuing Deer a citation for speeding, the officer asked to search Deer's car. Id. When Deer refused, the officer said he would detain the car until a drug dog arrived, causing Deer to agree to the search. Id. We held that the officer "did not have probable cause to believe that Deer was engaged in criminal activity when he first requested the consent to search." Id. at 736, 441 S.E.2d at 37. "When Deer refused that request, [the officer] effected a seizure by stating that he would detain the vehicle for up to an hour to await the arrival of a K-9 unit." Id. Because "that seizure was not based upon an articulable suspicion that Deer was involved in criminal activity, Deer's further detention was illegal." Id. Here, Mattis possessed probable cause to arrest after

witnessing the manner in which appellant drove, the occupants' furtive movements and the crack pipe in plain view.

Because Mattis had probable cause to arrest appellant for possessing cocaine, the search was reasonable and constitutional.  Therefore, the trial court did not err in denying appellant's motion to suppress.  Accordingly, we affirm the decision of trial court.

<u>Affirmed</u>.

Benton, J., dissenting.

In view of the decisions in <u>Knowles v. Iowa</u>, 525 U.S. 113 (1998), and <u>Lovelace v. Commonwealth</u>, 258 Va. 588, 522 S.E.2d 856 (1999), I would hold that the trial judge erred in ruling that Deputy Sheriff Mattis lawfully searched Byrd as an incident of detaining him for a misdemeanor citation offense.

The evidence proved and the trial judge found that the officer detained Byrd for a traffic violation. Denying the motion to suppress, the trial judge ruled as follows:

> [T]he stop is perfectly reasonable and legal under the facts that I've heard, and there -- we've got a traffic stop.
>
> Identification shows that the Defendant is driving revoked. That is a class one misdemeanor. He could have arrested him at that point. He did not take him into custody but gave him his Miranda warnings as though he were arresting him. So you've got a search incident to arrest. Overrule your motion.

In <u>Knowles</u>, a police officer stopped the defendant for a misdemeanor traffic violation. 525 U.S. at 114. Although the Iowa statute allowed the officer to effect either a full custodial arrest or issue a citation, the officer only issued a citation. <u>Knowles</u>, 525 U.S. at 115. Addressing the propriety of the officer's search of the car, the United States Supreme Court refused to extend the "bright-line rule," authorizing police officers to conduct a full search as an incident to arrest, to a "search incident to citation." <u>Knowles</u>, 525 U.S. at 118-19 (citing <u>United States v. Robinson</u>, 414 U.S. 218 (1973)). The Court held that the officer's search incident to a citation violated the Fourth Amendment. <u>Id.</u> at 118-19.

The Supreme Court of Virginia analyzed Code § 19.2-74 in <u>Lovelace</u> and held as follows:

> [W]e [do not] believe that Code § 19.2-74(A)(2) contemplates a custodial situation equivalent to an actual custodial arrest. Under that statute, a suspect is detained, or in the custody of the police officer, only long enough for the officer to take down the name and address of the person and issue a summons.

258 Va. at 596, 522 S.E.2d at 860. As the Court held, a detention under Code § 19.2-74(A)(2)

"that is effected by issuing a citation or summons rather than taking the suspect into custody does

not, by itself, justify a full field-type search." Lovelace, 258 Va. at 596, 522 S.E.2d at 860.[1]

---

[1] Pertinent to the issues raised on this appeal, the provisions of Code § 19.2-74(A)(1) are similar to the provisions of Code § 19.2-74(A)(2). In pertinent part, the statute provides as follows:

A. 1. Whenever any person is detained by or is in the custody of an arresting officer for any violation committed in such officer's presence which offense is a violation of any county, city or town ordinance or of any provision of this Code punishable as a Class 1 or Class 2 misdemeanor or any other misdemeanor for which he may receive a jail sentence, except as otherwise provided in Title 46.2, or § 18.2-266, or an arrest on a warrant charging an offense for which a summons may be issued, and when specifically authorized by the judicial officer issuing the warrant, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82.

Anything in this section to the contrary notwithstanding, if any person is believed by the arresting officer to be likely to disregard a summons issued under the provisions of this subsection, or if any person is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person, a magistrate or other issuing authority having jurisdiction shall proceed according to the provisions of § 19.2-82.

2. Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, except as otherwise provided in Title 46.2, or to the offense of public drunkenness as defined in § 18.2-388, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving of such person of his written promise to appear at such time and place, the officer shall

- 10 -

In this case, both traffic violations the officer observed were offenses for which the officer is directed by Code § 19.2-74(A)(1) to issue a summons in lieu of arrest. See Code § 46.2-301(C) (providing that driving while license is suspended or revoked is a Class 1 misdemeanor); Code § 46.2-1013 (driving without lights illuminating the rear license plate is prohibited). The evidence proved that when Deputy Mattis activated his lights and sirens he saw activity in the vehicle and "everything started getting crazy inside the vehicle." At that time, "Byrd seemed to devote some more attention to [the passenger] than he did the road." When the vehicle stopped, the passenger "bailed out of the vehicle" and "was having an epileptic seizure." As another officer detained the passenger, Deputy Mattis asked Byrd for his driver's license and learned that "his license was revoked." Although Deputy Mattis saw a "crack pipe in the back floorboard behind the passenger's seat," he asked Byrd to exit the vehicle and "detained him in cuffs" because of the traffic offense. While Deputy Mattis went to assist the other officer with the passenger's medical emergency, Byrd "was standing on the back side of the car."

At some point during his detention, Byrd told Deputy Mattis that he was driving in an effort to get the passenger to a hospital for medical treatment for the seizures. Deputy Mattis also learned that the car was not Byrd's. During this detention, Deputy Mattis searched Byrd and "recovered crack cocaine in a tissue from [Byrd's] front, right pants pocket." After the search, Deputy Mattis "decided to go ahead and release [Byrd]," and then he went "to the hospital to go deal with [the passenger]." When he released Byrd, he told Byrd he "would be getting a warrant for him." He said he did not issue even a summons for driving because he "had too much going on that night." This evidence does not support the trial judge's ruling that Deputy Mattis

---

forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82.

Code § 19.2-74.

searched Byrd incident to a lawful arrest.  Rather, it proved that Deputy Mattis searched Byrd incident to a traffic citation, which is precisely what <u>Knowles</u> and <u>Lovelace</u> prohibit.

Moreover, the record clearly established that Deputy Mattis conducted a full search of Byrd and did so without an individualized suspicion that would form the basis of probable cause, and without the authority provided by a formal arrest.  Indeed, as the following colloquy demonstrates, Deputy Mattis never testified that the crack pipe was an item he associated with Byrd:

> THE COURT:  When did you place him under arrest, if at all?
>
> THE WITNESS:  I wouldn't say -- he wasn't under arrest.  He was detained . . . .
>
> I could have arrested for driving while revoked, but I didn't at that point.  I usually detain someone and get everything worked out and then figure out if I'm going to arrest them.
>
> THE COURT:  But you took the precaution of reading him his rights under Miranda versus Arizona?
>
> THE WITNESS:  Yes.
>
> THE COURT:  And he acknowledged those rights?
>
> THE WITNESS:  Yes.
>
> THE COURT:  And then you conducted a search --
>
> THE WITNESS:  Yes.
>
> THE COURT:  -- after you determined he had been revoked?
>
> THE WITNESS:  Yes.
>
> THE COURT:  So you had reason to arrest, but you didn't arrest?
>
> THE WITNESS:  That's correct.

Deputy Mattis did not articulate the reason he was pressing to get to the hospital where the medics took the passenger.  The record clearly established, however, that he had reason to suspect the passenger was the source of the crack pipe.  It was behind the passenger's seat, and

he was having a seizure. Only after the medics arrived did Deputy Mattis begin to "focus [his] attention back on . . . Byrd." As Deputy Mattis testified, "[Boyd] wasn't under arrest. He was detained." Any doubt about this is removed by the officer's explanation: "I could have arrested for driving while revoked, but I didn't at that point. I usually detain someone and get everything worked out and then figure out if I'm going to arrest them." After releasing Byrd without inquiry about the pipe and without even giving him a summons, Deputy Mattis immediately went to the hospital where the medics had taken the passenger. His suspicion clearly was focused on the passenger. Furthermore, individualized suspicion was lacking with respect to Byrd.

Likewise, "the very limited intrusion" that occurred in Cupp v. Murphy, 412 U.S. 291, 296 (1973), does not support the search that occurred in this case. The Supreme Court was careful to note in Cupp that "we do not hold that a full Chimel search would have been justified in this case without a formal arrest and without a warrant" and further noted that "the respondent was not subjected to such a search." 412 U.S. at 291. The record in this case clearly established that Deputy Mattis conducted a full search of Byrd and did so without probable cause or a formal arrest. In addition, the trial judge found, in any event, that the officer's search of Byrd occurred because the officer had detained him for violating Code § 46.2-301, the misdemeanor offense of driving on a revoked or suspended license.

Any resemblance between the facts of this case and the facts that support the holding in Maryland v. Pringle, 540 U.S. 366 (2003), are superficial. In Pringle, the police officer found a large amount of money in the glove compartment and a large quantity of drugs behind the back seat armrest. "The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." 540 U.S. at 373. This inference became a significant matter in

- 13 -

the probable cause determination in Pringle because the three men were together in the car at 3:15 a.m. and none admitted ownership of the items. As the Court noted:

> The officer questioned all three men about the ownership of the drugs and money, and told them that if no one admitted to ownership of the drugs he was going to arrest them all. The men offered no information regarding the ownership of the drugs or money. All three were placed under arrest and transported to the police station.

540 U.S. at 368-69. Thus, on "these facts" the Court concluded "it [was] an entirely reasonable inference . . . that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." Id. at 372.

Unlike Pringle, the record contained no facts suggesting a common drug dealing enterprise. Rather, the facts in this case show a crack pipe on the floorboard behind the passenger seat. Byrd was driving at 10:00 p.m., and he was driving another person's car. The officers had no reason to believe Byrd was aware of the item on the rear floorboard of a car that did not belong to him. Additionally, the passenger was having some type of seizure and attempted to leave the car, suggesting that he may have been the source for the crack pipe. More telling, the police officer made no inquiry of Byrd before searching him about his knowledge of the pipe. These facts provide no basis upon which the officer could "reasonabl[y] . . . infer a common enterprise." Pringle, 540 U.S. at 373.

In summary, the trial judge did not find that the officer detained Byrd for the pipe in the car. He also did not find that the officer arrested Byrd for that circumstance. Indeed, the officer gave no testimony suggesting that he suspected the pipe was Byrd's, that the pipe was within Byrd's dominion and control, or that Byrd knew it was in the car. The trial judge erroneously ruled that the search was a "search incident to arrest." Deputy Mattis conducted a full search of Byrd in violation of the Fourth Amendment. See Lovelace, 258 Va. at 597, 522 S.E.2d at 860

- 14 -

(holding that, "[b]ased on the Supreme Court's decision in <u>Knowles</u>, . . . the search . . . was not consistent with the Fourth Amendment").

For these reasons, I dissent.