COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


DEMOND ALLEN RAMEY

                                        OPINION BY
v.    Record No. 1280-00-3        JUDGE G. STEVEN AGEE
                                        JUNE 19, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Jonathan M. Apgar, Judge

            John P. Varney (Office of the Public
            Defender, on brief), for appellant.

            Stephen R. McCullough, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Demond Allen Ramey (Ramey) was indicted for possession of

cocaine with intent to distribute, in violation of Code

§ 18.2-248, and possession of a firearm while possessing cocaine

with intent to distribute, in violation of Code § 18.2-308.4(B).

Prior to trial, Ramey moved to suppress the evidence of drugs

and the firearm alleging those items had been gathered in

violation of the Fourth Amendment.  Following a hearing on the

motion, the Circuit Court of the City of Roanoke denied the

motion.  Ramey then entered a conditional plea of guilty to the

charges, reserving the right to appeal the trial court's denial

of the motion to suppress.  The trial court sentenced Ramey to

serve a total of fifteen years incarceration, with ten years suspended, and levied a fine of $500.

Ramey now appeals his conditional plea pursuant to Code § 19.2-254 to this Court averring the trial court erred in denying his motion to suppress. Ramey argues the motion should have been granted because the arresting officer lacked a reasonable, articulable suspicion to detain him, and, in the alternative, the continued detention by the officer after his suspicions were dispelled was unlawful. We hold that the officer lacked reasonable suspicion for the detention and, therefore, reverse the trial court's decision.

## Background

On August 21, 1999, at approximately 2:09 p.m., Officer Vineyard of the Roanoke City Police Department received a transmission from police dispatch alerting officers to be on the lookout for a vehicle with a white female driver and a black male passenger. The alert provided a description of the car, its license number, and the last known geographic location of the vehicle. The dispatch indicated that the black male was "somehow" involved in a fatal gang shooting the previous day, but relayed no further information as to the source of the report or in what capacity the black male was involved in the shooting.

Officer Vineyard knew of the shooting and subsequent retaliatory events taking place in Roanoke. In addition,

-

Officer Vineyard knew that an individual named Timothy Buford and a juvenile were two suspects in the fatal shooting. Immediately after the dispatch, Officer Vineyard spotted a vehicle and its occupants, which matched the given description and was in the named geographic area. The vehicle soon voluntarily stopped at a laundromat, and Officer Vineyard pulled in behind the vehicle while calling for assistance. Two other police vehicles promptly arrived and blocked the suspect vehicle.

Officer Vineyard approached the vehicle and asked the passenger, Ramey, for identification. Upon viewing Ramey's valid driver's license, Officer Vineyard concluded that Ramey was neither Timothy Buford nor the juvenile sought. However, the officer still did not know whether Ramey or the vehicle was involved in the fatal shooting.

Officer Vineyard, pursuant to standard police department procedure, kept Ramey's driver's license and ran a computer check on the information. The background check, which took about five minutes, informed the officer there was an outstanding warrant for Ramey's arrest unrelated to the previous day's shooting. Officer Vineyard asked Ramey to exit the vehicle. Ramey grew "wild," resisted, wedged himself into the car, reached toward his back and threw a bag between the front two seats. Witnessing the behavior, the officers feared for their safety. The officers removed Ramey from the vehicle, and

-

Officer Vineyard observed the weapon and drug contraband that served as the basis for the possession and gun charges.

## Analysis

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights." Reel v. Commonwealth, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000). "It[, however,] is well established that, on appeal, appellant carries the burden to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of a motion to suppress constitutes reversible error." Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993). "Ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed de novo on appeal. This Court is bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998) (citations omitted).

Ramey advances two arguments to support his suppression motion. First, he claims the officers lacked reasonable suspicion to make the initial investigatory stop because the language in the dispatch lacked sufficient indicia of

-

reliability and, therefore, Officer Vineyard lacked reasonable, articulable suspicion of criminal activity sufficient to justify a stop or seizure of Ramey's vehicle.  Alternatively, Ramey claims that if the initial stop was valid, once the officers determined that he was neither of the sought suspects, the continued detention of Ramey was unlawful.  Because we conclude that the officers lacked the requisite reasonable suspicion to conduct the initial investigatory stop, we do not address Ramey's second assignment of error.

The stop of a vehicle and detention of the driver constitute a seizure within the meaning of the Fourth Amendment to the United States Constitution, even though the stop is limited and the detention brief.  See Deer v. Commonwealth, 17 Va. App. 730, 732, 441 S.E.2d 33, 35 (1994) (citing Castaneda v. Commonwealth, 7 Va. App. 574, 579, 376 S.E.2d 82, 84-85 (1989) (en banc)).  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.[1]

---

[1] The Fourth Amendment does not, however, require a police officer to "simply shrug his shoulders and allow a crime to occur or a criminal to escape.  A brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."  Adams v. White, 407 U.S. 143, 145-46 (1972).

A police officer may stop and question a person only if the officer has reasonable, articulable suspicion to believe the person may be involved in criminal activity.  See Terry v. Ohio, 392 U.S. 1, 30 (1968).  Reasonable suspicion, while not as stringent a test as probable cause, requires at least an objective justification for making the stop.  See United States v. Sokolow, 490 U.S. 1, 7 (1989).  A stop must be based on something more than the officer's "inchoate and unparticularized suspicion or 'hunch.'"  Terry, 392 U.S. at 27.  "At the time of the stop, the officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, objectively warrant a reasonable person with the knowledge and experience of the officer to believe that criminal activity is afoot."  Id. at 21-22.  In determining whether a police officer had a particularized and objective basis for an investigatory stop, a court must consider the totality of the circumstances.  See United States v. Cortez, 449 U.S. 411, 417-18 (1981).

Officer Vineyard stopped (and for Fourth Amendment purposes "seized") Ramey's vehicle based on the police dispatch's broadcast that "the black male in the vehicle . . . was somehow involved" in the previous night's fatal shooting.  Officer Vineyard knew nothing more about the vehicle, its occupants or what "somehow involved" in the shooting meant.  The police dispatch was essentially the totality of the circumstances known

-

to Officer Vineyard at the time of the stop.  The Commonwealth presented no evidence concerning the source of the dispatch. Accordingly, as the Commonwealth conceded on brief and at oral argument, our analysis of the legality of the initial stop must proceed as if the dispatch information originated from an anonymous source.

In Alabama v. White, 496 U.S. 325 (1990), the United States Supreme Court held that an anonymous tip could furnish reasonable suspicion for a stop, but only under certain conditions:

> "[T]he anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former.  Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call.  What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information – a special familiarity with respondent's affairs.  The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel.  Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.  When significant aspects of the caller's predictions were verified, there was reason to believe not only that the

-

> caller was honest but also that he was well informed, at least well enough to justify the stop.
>
> Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car.

Id. at 332 (citations omitted).

White holds that when the police receive a tip from an unidentifiable informant, the tip nonetheless may be deemed reliable if it contains "inside information" or a similar verifiable explanation of how the informant came to know of the information in the tip, which the police in turn independently corroborate. See Beckner v. Commonwealth, 15 Va. App. 533, 425 S.E.2d 530 (1993). Accord Giles v. Commonwealth, 32 Va. App. 519, 529 S.E.2d 327 (2000).

The United States Supreme Court revisited the use of an anonymous tip as the basis for a Terry stop in Florida v. J.L., 529 U.S. 266 (2000). In J.L., the police received an anonymous telephone call reporting "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." Id. at 678. The police had no audio recording of the call, nor did they know anything about the informant. Id. Nonetheless, based on the allegation and information in the tip, two officers proceeded to the bus stop, located a black male wearing a plaid shirt, and, without independently observing any

-

suspicious behavior, initiated an investigative stop of that person.  Id.  As a result of this stop, the police discovered that the suspect was carrying a concealed weapon without a license and while under the age of eighteen, in violation of Florida law.  Id. at 268-69.  The suspect later moved to suppress evidence of the gun, arguing that the police discovered it as a result of an unconstitutional stop.

The Supreme Court ruled that the stop violated the Fourth Amendment.  Id. at 274.  The Court explained that this case involved an anonymous tip and, therefore, under White, the police were required to corroborate the tip.  Id.  However, to corroborate a tip the police must do more than verify easily obtainable information that tends to indicate the informant's basis of knowledge about the suspect's alleged illegal activity. Id. at 271-72.  In J.L., the Court noted the anonymous tip did not contain any information, such as a prediction regarding the suspect's future behavior, which, if corroborated, would indicate that the informant was both honest and well informed. Id. at 271.  Rather, "[a]ll the police had to go on in [J.L.] was the bare report of an unknown, unaccountable informant . . . [with no] basis for believing he had inside information about [the suspect]."  Id.  Thus, the Court concluded that the tip failed under the White analysis.  Id.

Based on the record before us, we conclude the anonymous tip did not have the indicia of reliability sufficient to

-

justify the initial stop of Ramey's vehicle.  We reach this conclusion because the record is devoid of any basis by which to credit the dispatch.  While the dispatch (or tip) accurately described the vehicle, the occupants and their location, that information was "readily observable" to anyone as the Supreme Court noted in J.L.  The tip/dispatch disclosed no knowledge of "concealed criminal activity" or "ability to predict respondent's future behavior."

With no basis in the record upon which to judge the reliability of the tip/dispatch, we hold that it fails scrutiny under the Fourth Amendment for lack of any indicia of reliability and, therefore, is insufficient justification for the initial detention.

The Commonwealth asserts, however, that the initial stop should be upheld because the police were acting in a situation of "imminent public danger."  The Commonwealth argues there were exigent circumstances representing great public danger present at the time of Ramey's stop, i.e. retaliatory gang shootings taking place in Roanoke.  This danger, the Commonwealth contends, should overcome the deficient tip/dispatch so as to legitimize the initial stop.  We disagree.

While we agree there may be cases where an otherwise deficient anonymous tip of significant and imminent danger outweighs Fourth Amendment concerns, this is not such a case. Exigent circumstances exist where there is a compelling need for

-

immediate official action and a risk that any delay will present a substantial threat of imminent danger to life or public safety.  See Beckner, 15 Va. App. 533, 425 S.E.2d 530.

The Supreme Court in J.L., in dicta, provides us with guidance on the use of an "imminent danger" exception in the context of Fourth Amendment considerations.  Such an exception could apply in imperative situations, such as where there is "a report of a person carrying a bomb."  529 U.S. at 273-74.  In such a situation, the report "need [not] bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk." Id.

We have applied an imminent danger standard in reviewing the sufficiency of an anonymous tip where there is a contemporaneous description of dangerous criminal activity such as brandishing a firearm in a public place.  Scott v. Commonwealth, 20 Va. App. 725, 460 S.E.2d 610 (1995).  However, neither the tip in J.L. nor in the case at bar contained a specific description of dangerous criminal conduct either under way or likely to occur.

Here, the criminal activity had already taken place, and the police could only speculate that a retaliatory shooting might occur.  In addition, the police had no reason to believe Ramey was at that time involved in any criminal activity that posed an imminent harm to the public.

-

The Commonwealth cites no case law to justify application of an "imminent danger" exception based on the evidence in the record before us. There must be sufficient evidence in the record of a true "imminent" and significant danger before we could apply the exception. Reports of criminal activity, not specific to the individual, do not establish such a danger.

We hold the police lacked a reasonable and articulable suspicion of criminal activity to make the initial stop of Ramey based on the police dispatch. Accordingly, the trial court erred in not granting the motion to suppress. The evidence seized in the stop was, therefore, inadmissible. Ramey's convictions are reversed, and the case remanded for such further proceedings as the Commonwealth be advised to take.

<u>Reversed and remanded.</u>