COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Clements
Argued at Salem, Virginia and by teleconference


JERROD SHERRELL JACKSON, A/K/A
 JEROME JACKSON

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0628-02-3            JUDGE JEAN HARRISON CLEMENTS
                                              JUNE 17, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                     William W. Sweeney, Judge Designate

              Andrew W. Childress, Assistant Public
              Defender (Office of the Public Defender, on
              brief), for appellant.

              Paul C. Galanides, Assistant Attorney General
              (Jerry W. Kilgore, Attorney General, on
              brief), for appellee.


     Jerrod Sherrell Jackson was convicted in a bench trial of

assault and battery against a law enforcement officer, in

violation of Code § 18.2-57(C), possession of cocaine with intent

to distribute, in violation of Code § 18.2-248, and possession of

marijuana, in violation of Code § 18.2-250.1.[1]  On appeal, Jackson

contends the trial court erred (1) in denying his motion to

suppress the evidence offered against him that was obtained by the

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Jackson was also convicted of assuming another name, in
violation of Code § 18.2-504.1.  He does not challenge this
conviction on appeal.

police in violation of his Fourth Amendment rights and (2) in finding the evidence sufficient to prove he intended to distribute the cocaine in his possession.  Finding no error, we affirm the convictions.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I.  BACKGROUND

Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below.  See Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000); Weathers v. Commonwealth, 32 Va. App. 652, 656, 529 S.E.2d 847, 849 (2000).

So viewed, the evidence presented in this case establishes that, at approximately 11:50 p.m. on April 26, 2001, Lynchburg City Police Officer Tom Childress received a "LYN-COM" police dispatch alerting him to a report from Greenfield Security regarding the location of a man for whom there was an outstanding capias.  LYN-COM confirmed that a capias for failure to appear at a criminal proceeding was outstanding for the person named by Greenfield Security.  Childress testified he could not remember the name of the wanted man, but the

-

description he received from dispatch was of a black male, with a stocky build, wearing dark clothes and a black stocking cap, who had left the area served by Greenfield Security in the backseat of a green Allied taxi, identified as cab number eleven. According to dispatch, the taxi was "headed toward the area of 2202 Memorial Avenue."

Responding to the area where the taxi was reportedly headed, Officer Childress proceeded in his marked police car up Stuart Street toward the intersection of Memorial Avenue and Stuart Street. As he approached the intersection, Childress observed a green Allied taxi sitting under a streetlight at the intersection, approximately three houses away from 2202 Memorial Avenue. He saw two people in the taxi, the driver and a black male in the backseat. When the officer's headlights illuminated the taxi's interior, Childress saw that the passenger had a stocky build and was wearing dark clothing and a black stocking cap. Childress saw the passenger look in the direction of 2202 Memorial Avenue, where two marked police cars were parked, and then look directly at Childress. At that point, the taxi proceeded down Stuart Street past Childress's vehicle and away from 2202 Memorial Avenue. The driver of the taxi, who was called as a witness for Jackson, testified that the taxi was Allied cab number eleven.

Officer Childress turned his vehicle around and followed the taxi. After going approximately three blocks, the taxi

pulled into the parking lot of the Family Dollar store. Childress pulled his vehicle into the lot and parked behind the taxi. A second police officer pulled his vehicle into the parking lot and parked beside the taxi.

Officer Childress got out of his vehicle, approached the taxi, and informed the driver that he was checking information that there was an outstanding warrant for the passenger and that he would need to ascertain the passenger's identity. Childress then approached the passenger, later identified as Jackson, informed him of the report he had received from LYN-COM, and asked him if he had any identification. Jackson told Childress he did not have any identification on him. The officer then asked Jackson to get out of the taxi, and Jackson complied. When asked for his name and date of birth, Jackson told the officer his name was Jerome Saunders and his date of birth was February 26, 1972. Childress then asked Jackson his age, and Jackson responded that he was twenty-six years old. Immediately recognizing that Jackson's stated age was inconsistent with the year of his birth, Childress informed Jackson that, while not under arrest, he was no longer free to leave and would be handcuffed until the police could verify his identity.

However, when the other officer present attempted to handcuff him, Jackson spun loose, punched Officer Childress in the face, and attempted to flee. Jackson was subsequently subdued, placed under arrest for assaulting Childress, and

-

searched incident to that arrest.  On his person, the officers found $140 in twenty-dollar bills, a bag containing 8.3 grams of a green leafy material later determined to be marijuana, and a second bag containing 1.871 grams of a white substance later determined to be cocaine.  No smoking device was found on his person.

Later, at the magistrate's office with Jackson, Officer Childress learned that Jackson was not the person identified by Greenfield Security and dispatch as having an outstanding capias.

At trial, Investigator Davidson was qualified as an expert in narcotics trafficking.  He testified that the cocaine found on Jackson's person was packaged in a way typically used for distribution, was "almost ten times" the amount of cocaine a typical user of cocaine would possess, and had a "street value" of approximately $250.  Davidson also testified that a user would typically have a pipe or papers to smoke the cocaine.  He added that cocaine was typically sold in twenty-dollar "rock increments" and that those who purchased cocaine typically used twenty-dollar bills to pay for it.

Jackson testified he used cocaine but was not a dealer.  He further testified he had "so much" cocaine on him that night because he had just won $290 in the lottery and had used some of his winnings to buy cocaine and marijuana for his personal use. He did not have anything on him with which to smoke the drugs,

he testified, because the police "pulled [him] over" before he had the chance to get any "papers."

## II.  MOTION TO SUPPRESS

Jackson contends the police lacked a reasonable suspicion that he was wanted on an outstanding capias.  He claims his actions and the informant's vague and general description did not provide Officer Childress with sufficient information to justify the investigatory detention.  Therefore, Jackson argues, his initial detention was unlawful and all evidence resulting from that unlawful seizure was obtained in violation of his Fourth Amendment rights and should have been suppressed.  Thus, Jackson concludes, the trial court erred in not suppressing the evidence offered against him.[2]

The Commonwealth concedes that Jackson was effectively seized when he was informed that the police intended to compare his identity to that of a particular person for whom a capias had been confirmed.  The Commonwealth contends, however, that the information provided to Officer Childress by dispatch and his observations of Jackson's actions after receiving that information clearly justified a brief investigatory detention to check Jackson's identity.  Jackson's further detention, the Commonwealth continues, was also justified when he gave the

_____

[2] At oral argument, Jackson waived the other suppression-related arguments included in his appellate brief. Accordingly, we do not address those arguments here.

-

police obviously false information regarding his age and date of birth.  Thus, the Commonwealth concludes, the investigatory stop, Jackson's ensuing arrest, and the seizure of the marijuana and cocaine were proper.  We agree with the Commonwealth.

When a motion to suppress is reviewed on appeal, we examine the records of both the suppression hearing and the trial to determine whether the evidence was lawfully seized.  DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542 (1987).  "In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed de novo on appeal."  Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1991)).  However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

-

Under well-established Fourth Amendment principles, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  An investigatory stop under Terry "is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion."  Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (citing Illinois v. Wardlow, 528 U.S. 119, 126 (2000)).  "Actual proof that criminal activity is afoot is not necessary; the record need only show that it may be afoot."  Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992).  However, the justification for the investigatory stop "must be based on something more than the officer's 'inchoate and unparticularized suspicion or "hunch."'" Ramey v. Commonwealth, 35 Va. App. 624, 629, 547 S.E.2d 519, 522 (2001) (quoting Terry, 392 U.S. at 27).

In determining whether a police officer had a reasonable suspicion justifying an investigatory stop, "the courts must consider 'the totality of the circumstances—the whole picture.'" Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994) (quoting Sokolow, 490 U.S. at 8).  We are further mindful, in making that determination, that the police officer may "view the circumstances confronting him in light of his

-

training and experience, and he may consider any suspicious conduct of the suspected person." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996).

Here, the record establishes that Officer Childress received a report from dispatch that there was an outstanding capias for a man who was the backseat passenger in a green Allied taxi, identified as cab number eleven, heading for "the area of 2202 Memorial Avenue." The man was described as a black male, with a stocky build, wearing dark clothes and a black stocking cap. Upon arriving, shortly after receiving the dispatch, in the vicinity of 2202 Memorial Avenue, Childress observed Jackson, a stocky black male, wearing dark clothes and a black stocking cap in the backseat of a green Allied taxi, identified as cab number eleven, located approximately three houses away from 2202 Memorial Avenue. Childress saw Jackson look in the direction of 2202 Memorial Avenue, where marked police vehicles were parked. The officer then saw Jackson look back at him. At that point, the taxi drove away from the location.

Based on the totality of these circumstances, we conclude that Officer Childress had a reasonable, articulable suspicion that Jackson was the man who was wanted on the outstanding capias. Not only did Jackson's physical characteristics and clothing match the description provided by dispatch, Childress observed Jackson in the vicinity of the address provided by

-

dispatch in the backseat of a taxi matching the description provided by dispatch. Childress's suspicion that Jackson was the wanted man was further buttressed by Jackson's observable interest in the indicated address and his leaving the area immediately upon noticing Childress's approach.

Officer Childress's initial detention of Jackson was therefore reasonable to allow the officer to confirm or dispel his suspicion by checking Jackson's identity. Accordingly, that brief investigatory detention was not in violation of Jackson's Fourth Amendment rights.

Thereafter, when Jackson gave the officer obviously false identifying information, Officer Childress was justified in detaining him further while attempting to obtain additional information. Once Jackson struck Childress in the face, the officer had probable cause to arrest Jackson. Incident to that arrest, the officers could properly conduct the search that resulted in the discovery of the marijuana and cocaine on Jackson's person. Hence, the trial court did not err in denying Jackson's motion to suppress.

### III. SUFFICIENCY OF THE EVIDENCE

Jackson next contends the evidence was insufficient to prove he intended to distribute the cocaine in his possession. We disagree.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to

the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987). "In doing so, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

"Where an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). "Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Id. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

-

"However, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997).

Factors that may indicate the defendant intended to distribute the illegal drugs in his possession include the "[p]ossession of a quantity [of drugs] greater than that ordinarily possessed for one's personal use," Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 180 (1988) (en banc), "[t]he method of packaging of the controlled substance," Servis, 6 Va. App. at 524, 371 S.E.2d at 165, the quantity and denomination of the cash possessed, see Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998), and "the absence of any paraphernalia suggestive of personal use," id.

Here, the record contains ample evidence that Jackson intended to distribute the cocaine in his possession. Jackson possessed 1.871 grams of cocaine, consisting of three separate rocks in three separate bags. He also had $140 in twenty-dollar bills on his person. In addition, he had no smoking device on his person. The Commonwealth's narcotics expert, Investigator

-

Davidson, testified that the typical cocaine user purchased cocaine in twenty-dollar "rock increments" and paid with twenty-dollar bills. Davidson further testified that the cocaine found on Jackson's person had a "street value" of approximately $250 and was packaged in a manner typically used for distribution. It was also, according to Davidson, nearly ten times the amount of cocaine a typical user of cocaine would possess. Davidson also testified that a mere user would typically have a pipe or papers on him to smoke the cocaine.

Although Jackson testified at trial that he had just won the lottery, had purchased the cocaine in his possession for personal use, and had not had the chance before being detained by the police to procure papers with which to smoke the cocaine, the trial court was entitled, in assessing Jackson's credibility and determining the weight to accord his testimony, to conclude that he had given false testimony regarding his intended use of the cocaine and that he had done so to conceal his guilt. See Christian v. Commonwealth, 33 Va. App. 704, 716, 536 S.E.2d 477, 483 (2000) (en banc); Welch v. Commonwealth, 15 Va. App. 518, 525, 425 S.E.2d 101, 106 (1992).

We conclude, therefore, that the evidence presented by the Commonwealth was sufficient to prove beyond a reasonable doubt

-

that Jackson possessed the cocaine with the requisite intent to distribute it.

Accordingly we affirm Jackson's convictions.

<u>Affirmed.</u>