COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


EARNEST A. JOHNSON, III
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1645-07-2                      JUDGE CLEO E. POWELL
                                                         APRIL 28, 2009
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                        George Mason, III, Judge

            Mark S. Gardner (Muriel-Theresa Pitney; Gardner, Maupin,
            Sutton & Haney, P.C.; The Law Office of Muriel Pitney, PLC, on
            brief), for appellant.

            Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Earnest A. Johnson, III, was convicted, pursuant to a guilty plea in accordance with Code

§ 19.2-254, of possession of cocaine with intent to distribute, in violation of Code § 18.2-248.

Johnson appeals the trial court's denial of his pretrial motion to suppress the evidence,

contending that his Fourth Amendment right against unreasonable searches and seizures was

violated.  Johnson argues that police did not have probable cause to justify the seizure and

subsequent search of his person and his vehicle.  Finding that the information provided to the

officers by unwitting informants provided officers with a reasonable suspicion to justify his

seizure, we affirm Johnson's conviction.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Detective Barry Stocks of the Spotsylvania Sheriff's Office was working undercover with an unidentified confidential informant ("CI") in an attempt to purchase cocaine.[1] The CI introduced Detective Stocks to a woman ("female unwitting informant") to assist in the purchase of cocaine. The female unwitting informant was not a confidential informant and did not know that the detective was a member of law enforcement.[2] Rather, she was working with Detective Stocks and the CI to get drugs or money. The female unwitting informant had purchased cocaine for Detective Stocks twice in the prior week.

On the evening of February 4, 2006, Detective Stocks and the CI picked up the female unwitting informant from a local hotel. They then spent between one and two hours unsuccessfully attempting to purchase cocaine. The female unwitting informant then told Detective Stocks that she knew a man ("male unwitting informant") with a connection. She called the male unwitting informant, and he met up with Detective Stocks, the CI, and the female unwitting informant at a convenience store on Salem Church Road. The male unwitting informant told Detective Stocks that he had somebody from whom he purchases cocaine and that the seller would be at the convenience store shortly in a green vehicle. Detective Stocks relayed this information to surveillance officers in code using a cellular phone.

A few minutes later, a green vehicle driven by Johnson arrived at the convenience store. Upon seeing the vehicle's arrival, both unwitting informants said, "He's here." The unwitting

---

[1] Detective Stocks described a confidential informant as a person "who is known to" the sheriff's office and is working with the office "to benefit himself in the long run."

[2] Detective Stocks refers to this type of person as an "unwitting." According to Detective Stocks, "an unwitting is someone who gets drawn into the group or circle with the purpose of finding [the detective] cocaine but not knowing [that] she [or he] is doing it for the benefit of law enforcement." Additionally, Detective Stocks testified that approximately one-quarter of the controlled purchases he had made in the past involved an unwitting participant.

informants then got out of the CI's truck, while the CI and Detective Stocks remained behind. The male unwitting informant walked over to Johnson's car and stood there for approximately thirty seconds to one minute. The female unwitting informant ran to catch up with the male unwitting informant while he was still at the car but she was unable to do so. The male unwitting informant then left the car, walked toward the female unwitting informant, spoke to her briefly, and then they both walked back to the CI's truck where Detective Stocks and the CI waited.

As they walked, the male unwitting informant told the female unwitting informant that his "connection" was "straight" but "spooked" and wanted to change the location to a convenience store on Leavells Road. When the unwitting informants got back to the CI's car, the female unwitting informant then relayed this information to Detective Stocks. At trial, Detective Stocks testified that he interpreted "straight" to mean that Johnson had drugs on him; however, Detective Stocks acknowledged that "straight" might also mean that Johnson had access to drugs.

As Johnson left the convenience store parking lot, Deputy Woodard, another member of the surveillance team, followed behind him in an unmarked police car; Detective Haney, also a member of the surveillance team, proceeded in front of Johnson. Rather than remaining on Salem Church Road, the most direct route to the second convenience store, Johnson made a left turn onto Harrison Road. Johnson then drove past the intersection with Salem Station Boulevard, and headed in the opposite direction from the Leavells Road convenience store.

Approximately two miles from the first convenience store, Johnson turned in to a subdivision that had only one road leading in and out. Deputy Woodard then activated his emergency equipment and pulled behind Johnson; at the same time, Detective Haney blocked Johnson in by stopping his car in front of Johnson. Deputy Woodard testified that he stopped Johnson based solely on the information that he received from Officer Cielakie.

A narcotics K-9 unit then performed a scan of Johnson's vehicle. The K-9 unit alerted to the presence of narcotics in the vehicle, and Johnson was arrested when a search of his person revealed marijuana and crack cocaine. At trial, Johnson sought to suppress the evidence on the grounds that he was seized in violation of his rights under the Fourth Amendment. After hearing arguments from both sides, the trial court found that the officers had probable cause to stop Johnson. Johnson appeals.

## II. ANALYSIS

Johnson contends that the stop and subsequent search of his vehicle was an unreasonable search and seizure in violation of the Fourth Amendment because police did not have probable cause for the stop. However, the appropriate analysis when one challenges the validity of an investigatory stop is whether the police possessed a reasonable, articulable suspicion that crime was afoot. See United States v. Sokolow, 490 U.S. 1, 7 (1989) ("[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."). Therefore, we will only address the issue of whether the officers possessed the necessary reasonable, articulable suspicion.

Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that for probable cause." Id. However, "[r]easonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop." Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000).

"When a confidential informant provides the basis for probable cause, there are two considerations that are particularly relevant to our analysis: (1) the veracity or reliability of the informant and (2) the informant's basis of knowledge." Byrd v. Commonwealth, 50 Va. App.

542, 551, 651 S.E.2d 414, 419 (2007) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)).

"These factors are also relevant in the reasonable suspicion context, although allowance must be

made in applying them for the lesser showing required to meet that standard." Alabama v.

White, 496 U.S. 325, 328-29 (1990).

In determining whether a reasonable, articulable suspicion exists, we examine the totality

of the circumstances, as they appear to the officers based on their experience and training. See

United States v. Cortez, 449 U.S. 411, 417 (1981) (stating "the totality of the circumstances --

the whole picture -- must be taken into account"). "The 'totality of the circumstances,' . . .

includes 'the content of the information possessed by police and its degree of reliability,' i.e.

'quantity and quality,' of a tip." Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595,

599 (2004) (quoting White, 496 U.S. at 330).

Additionally, "[t]he reliability and basis of knowledge of an informant are not

'independent elements that must be proved.'" Byrd, 50 Va. App. at 551-52, 651 S.E.2d at 419

(quoting Polston v. Commonwealth, 24 Va. App. 738, 744, 485 S.E.2d 632, 635 (1997)).

> Instead, they are better understood as relevant considerations in the
> totality-of-the-circumstances analysis that traditionally has guided
> probable-cause determinations: a deficiency in one may be
> compensated for, in determining the overall reliability of a tip, by a
> strong showing as to the other, or by some other indicia of
> reliability.

Gates, 462 U.S. at 233. Accordingly, "'if a tip has a relatively low degree of reliability, more

information will be required to establish the requisite quantum of suspicion than would be

required if the tip were more reliable.'" Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting

White, 496 U.S. at 330).

The record demonstrates that Deputy Woodard stopped Johnson based on the information

the unwitting informants provided to Detective Stocks. As such, the validity of the traffic stop in

this case turns upon whether the tip provided by the unwitting informants sufficed to give rise to reasonable suspicion.

The Commonwealth argues that the unwitting informants are merely tools of law enforcement and therefore we need not factor their reliability or basis of knowledge into our analysis of the totality of the circumstances. In support of this proposition, the Commonwealth relies upon this Court's decision in Slade v. Commonwealth, 43 Va. App. 61, 596 S.E.2d 90 (2004), in support of this notion. We disagree.

In Slade, a confidential informant had provided cash to an unwitting informant to purchase cocaine from a specific home. Id. at 64-65, 596 S.E.2d at 92. The confidential informant then witnessed the unwitting informant enter appellant's home and then return with cocaine. Id. at 65, 596 S.E.2d at 92. This sequence of actions was repeated several different times at the same location. Id. Under those facts, this Court ruled that only the reliability of the confidential informant was at issue, as the warrant was secured based on his observations; the reliability of the unwitting informant, on the other hand, was not at issue, as the "unwitting informant was merely an instrument of the controlled buy." Id. at 69, 596 S.E.2d at 94.

In the present case, however, the unwitting informants were much more than mere instruments in the controlled buy. Here, the unwitting informants provided a majority of the information that became the basis for the stop. Therefore, the reliability of the unwitting informants and the basis of their knowledge are relevant considerations in the totality of the circumstances analysis in determining whether the unwitting informants provided a sufficient basis for the stop.

The reliability of a tip provided by a "criminal" rather than "disinterested citizen" may be established in different ways[3]:

> (1) the informer has previously given reliable information; (2) the informer previously has worked with police and has made controlled buys or worked in narcotic surveillance or other law enforcement efforts; (3) the informer provided detailed information that only a person who had actually observed the criminal activity would know; or (4) the informer has made a declaration against his penal interest.

Russell v. Commonwealth, 33 Va. App. 604, 611, 535 S.E.2d 699, 702 (2000) (quoting Polston, 24 Va. App. at 745, 485 S.E.2d at 635).

We consider the reliability factors of both unwitting informants together, as the two unwitting informants were working in concert. Turning first to the female unwitting informant, her reliability is established under the first two factors. The record shows that, during the prior week, the female unwitting informant had provided information to Detective Stocks about where to purchase drugs. In addition to providing the information, she also successfully completed two controlled buys, albeit without any knowledge that she was working for the police.

Unlike the female unwitting informant, the male unwitting informant was unknown to the police. However, the male unwitting informant was able to predict that Johnson would arrive shortly in a green car. We have previously recognized that, "'[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.'" Ramey v. Commonwealth, 35 Va. App. 624, 631, 547 S.E.2d 519, 523 (2001) (quoting White, 496 U.S. at 332). Thus, the fact that the male unwitting

---

[3] Although there is nothing in the record to indicate that either the male or female unwitting informant has ever been convicted of a crime, both the male and female unwitting informants were actively attempting to secure drugs. Therefore, for the purposes of this opinion, we view them as "criminals" rather than "disinterested citizens."

informant was able "to predict [Johnson's] future behavior" is a significant indicia of the informant's reliability, "because it demonstrated inside information – a special familiarity with respondent's affairs." Id. at 630, 547 S.E.2d at 523.[4]  Additionally, the male unwitting informant identified Johnson as his connection when, upon seeing a green car arrive, the male unwitting said, "He's here," approached the green car, and appeared to converse with Johnson for approximately a minute.

Another means by which one can establish the reliability of a criminal informant is if the information provided by the informant constitutes a declaration against penal interest.  Russell, 33 Va. App. at 611, 535 S.E.2d at 702.  Here, the record clearly demonstrates that both unwitting informants were making declarations against their penal interest.  Both unwitting informants were admittedly engaging in criminal activity.  Arguably, "'there is more reason to rely upon [admissions made unknowingly to police] than admissions made directly to police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk.'"  State v. Lair, 630 P.2d 427, 430 (Wash. Ct. App. 1981) (quoting 1 Wayne R. LaFave, Search and Seizure § 3.3, at 530 (1978)); see also Comi v. State, 338 A.2d 918, 922 (Md. Ct. Spec. App. 1975) (concluding that an individual who did not know that his statement would be used by police had no motive to lie and therefore was reliable).

Having found that the unwitting informants have some indicia of reliability, we next assess the basis for their knowledge.  Beckner v. Commonwealth, 15 Va. App. 533, 535-36, 425 S.E.2d 530, 532 (1993) ("The informant must provide some basis for his knowledge before the

---

[4] While this information is not as detailed as that provided by the informant in White, 496 U.S. 325, where the Supreme Court found that police had a reasonable articulable suspicion based upon an informant's tip, it did not have to be.  In White, the informant had to provide a detailed description of the defendant and the vehicle the defendant would be driving because the informant would not be present to identify the defendant.  Here, it was unnecessary for the male

police officer relies upon it as being reliable enough to support an investigatory stop."). In the present case, the male unwitting informant was observed approaching Johnson's car, where he remained for thirty seconds to a minute. After this encounter, the male unwitting informant spoke with the female unwitting informant, who, in turn, informed Detective Stocks that Johnson was "straight" but "spooked" and that he (Johnson) will meet them at a convenience store on Leavells Road. Based on this sequence of events, it was reasonable for Detective Stocks to conclude that the basis for the male unwitting informant's knowledge is his discussion with Johnson.

Johnson makes much of the fact that when he left the store (which he did without making a purchase or even going into the store), he turned away from the most direct route to the convenience store on Leavells Road. Indeed, when he was stopped, Johnson was headed into a subdivision that only had one way out. While this is a factor to consider, it does not negate the fact that Deputy Woodard had a reasonable, articulable suspicion for the stop.

It has been recognized that a totality of the circumstances analysis, "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Cortez, 449 U.S. at 417-18).

Here, Deputy Woodard testified that, in his experience, it was not unusual for a drug dealer to take a circuitous route in order to thwart any law enforcement officers that might be following them. Thus, under the totality of the circumstances, Deputy Woodard still had a reasonable, articulable suspicion that Johnson possessed illegal drugs.

III. CONCLUSION

unwitting informant to provide such detailed identifying information, as the male unwitting informant was present.

Under the facts of this case, the police officers had a reasonable, articulable suspicion that crime was afoot prior to initiating their investigatory stop of Johnson. The information provided by the unwitting informants was credible, as they had the necessary indicia of reliability and a sufficient basis for their knowledge. Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>