UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Petty and Senior Judge Bumgardner
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 0132-14-2             JUDGE WILLIAM G. PETTY
                                           JUNE 17, 2014

KEVIN ANTHONY ROSSER


FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
Kimberley S. White, Judge

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Jordan B. Davies (Harris & Allen, P.C., on briefs), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the decision of the trial court to

grant Kevin Anthony Rosser's motion to suppress evidence obtained during a traffic stop.  On

appeal, the Commonwealth argues that the trial court erred in finding that Deputy Davidson did

not have reasonable, articulable suspicion to initiate an investigatory traffic stop.[1]  We disagree

and affirm the trial court's suppression of the evidence.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth filed a motion to amend the assignment or error to correct a
typographical error by substituting the word "an" before "investigatory traffic stop."  We grant
the motion and consider the assignment of error as amended.

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992).

So viewed, the evidence presented at the suppression hearing established that on May 21, 2013 Deputy Jamie Davidson received a "be on the lookout" alert from Sergeant Maxton[2] advising him that a gold Nissan Maxima driven by a bald male and "connected with the drug activity" would be in the area of Red House Road "in that time frame." While traveling on Red House Road, Deputy Davidson observed a gold Maxima in front of him. After following four or five cars lengths behind the car for about a mile, Deputy Davidson saw it turn into the driveway of a family known to Deputy Davidson.[3] Deputy Davidson passed the driveway, went down the road, and pulled into a nearby high school parking lot. Approximately forty-five seconds later, Deputy Davidson observed what appeared to be the same gold Maxima that he followed earlier driving past the school parking lot, traveling in the same direction it had been going before pulling into the driveway. Deputy Davidson then drove his cruiser back onto the road and behind the Maxima. Deputy Davidson testified that as soon as he approached the car, it "made an abrupt right turn on[to] Morris Avenue." This "struck [him] as odd" because it appeared, in

---

[2] Sergeant Maxton did not testify regarding the source and content of the information he relayed to Deputy Davidson. Thus, the record contains no evidence beyond the scant testimony of Deputy Davidson regarding the nature of the information possessed by Sergeant Maxton. Without knowing the source of the information passed along by Sergeant Maxton, the "be on the lookout" has no inherent indicia of reliability. Therefore, we must look at the other circumstances, as viewed by Deputy Davidson, to determine whether it was reasonable to conclude that criminal activity was afoot, justifying the investigatory stop. See Ramey v. Commonwealth, 35 Va. App. 624, 547 S.E.2d 519 (2001) (noting that where the information relayed by police dispatch to an officer does not indicate the source of the information, an analysis of the legality of the initial stop must proceed as if the dispatch information originated from an anonymous source).

[3] The record is unclear as to the relationship, if any, between Rosser and the homeowners.

light of his experience and training, that the driver of the car was trying to "evade contact with law enforcement." Accordingly, Deputy Davidson immediately initiated a traffic stop of the Maxima. The driver of the car was later identified to be Rosser. On cross-examination, Deputy Davidson conceded that not only did Rosser at all times drive his car below the posted speed limit, but he also properly used his turn signal for both right turns Deputy Davidson saw him make. Furthermore, the Commonwealth did not present any evidence connecting Rosser's location or conduct to "drug activity."

As a result of statements made by Rosser and contraband found in his car, he was arrested and charged with distribution of marijuana, pursuant to Code § 18.2-248.1, driving with a suspended or revoked license, pursuant to Code § 46.2-301, and falsely identifying himself to a law enforcement officer, pursuant to Code § 19.2-82.1. Rosser filed a motion to suppress all evidence arising from the traffic stop, alleging that it was obtained as the result of an illegal search and seizure. The trial court granted Rosser's motion to suppress. The Commonwealth appeals that decision here.

II.

The Commonwealth argues that, under the totality of the circumstances, Deputy Davidson had reasonable, articulable suspicion based on the combination of the "be on the lookout" alert and Rosser's evasive driving. Thus, the Commonwealth alleges, the trial court erred in granting Rosser's motion to suppress.

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights." Reel v. Commonwealth, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000). "'Ultimate questions of reasonable suspicion and probable cause[, however,] . . .' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193,

197, 487 S.E.2d 259, 261 (1997) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 198, 487 S.E.2d at 261.

"'When the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). "In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Id. "To determine whether an officer has articulated a reasonable basis to suspect criminal activity, a court must consider the totality of the circumstances, including the officer's knowledge, training, and experience." Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995). "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'" Id. (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988)). However, "[l]awful conduct that the officer may subjectively view as unusual is insufficient to generate a reasonable suspicion that the individual is involved in criminal activity." Harris v. Commonwealth, 276 Va. 689, 698, 668 S.E.2d 141, 147 (2008). "To establish reasonable suspicion, an officer is required to articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." Id.

The Commonwealth argues that, even though the alert must be treated as an anonymous tip, the stop was justified in light of Deputy Davidson's judgment in initiating the stop, which provided sufficient corroboration of the information received from the "be on the lookout." The

Commonwealth alleges that the trial court failed to consider the deputy's judgment and experience in interpreting Rosser's behavior as evasive and, therefore, justifying the stop.

"Lawful conduct that the officer may subjectively view as unusual is insufficient to generate reasonable suspicion that the individual is involved in criminal activity." Id. Evaluating whether reasonable suspicion existed is an objective determination. Id. at 697, 668 S.E.2d at 146. In Harris, a police officer received a call from dispatch, informing him of an alleged intoxicated driver "in the 3400 block of Meadowbridge Road," driving a green Altima. Id. at 693, 668 S.E.2d at 144. The dispatcher gave the driver's name, a partial license plate number, and said that the driver was wearing a striped shirt. The officer was not given any background information about the person who called in the information or the time frame in which the caller had observed the car or the driver. Id. Shortly after responding to the call, the officer saw a green Altima traveling south on Meadowbridge Road. Id. The officer began following the car and noticed that its license plate number was similar to that reported to the dispatcher. Id. The officer observed that Harris, who was ultimately determined to be the driver of the Altima, drove within the speed limit at all times and the car never swerved. Id. The officer did observe the car's brake lights flash three times—once when Harris slowed down at an intersection in which he had the right of way, again when he was approximately fifty feet from a red traffic light, and a third time when he stopped the car on the side of the road. Id. After Harris stopped the car, the officer initiated a traffic stop of Harris's already stopped car. Id. As a result of this stop, Harris was arrested and convicted of feloniously operating a motor vehicle while intoxicated, following the trial court's denial of his motion to suppress evidence gathered as a result of the stop. Id. at 692, 668 S.E.2d at 143.

On appeal, the Supreme Court held that the trial court erred in denying the motion to suppress. The stop was in violation of Harris's Fourth Amendment rights because the officer's

- 5 -

observations, "when considered together with the anonymous tip, were not sufficient to create a reasonable suspicion of criminal activity." Id. at 698, 668 S.E.2d at 147. The Court reasoned that "[w]hen viewed in the context of the anonymous tip, Harris' act of slowing his car at an intersection, or of slowing before stopping at a red traffic signal, did not indicate that he was involved in the criminal act of operating a motor vehicle under the influence of alcohol." Id. The Court acknowledged that although "[d]riving to the side of the road and stopping may be subjectively viewed as unusual, . . . that conduct was insufficient to corroborate the criminal activity alleged in the anonymous tip." Id. "Lawful conduct that the officer may subjectively view as unusual is insufficient to generate reasonable suspicion that the individual is involved in criminal activity." Id. Indeed, "an officer's subjective characterization of observed conduct is not relevant to a court's analysis concerning whether there is a reasonable suspicion because the Court's review of whether there was reasonable suspicion involves application of an objective rather than a subjective standard." Id. at 697, 668 S.E.2d at 146.

Similarly, the information received by Deputy Davidson, coupled with Rosser's act of making a legal right turn after stopping momentarily in a driveway, did not indicate that he was involved in drug activity. The sum and substance of the alert Deputy Davidson received was to "be on the lookout" for a bald man in a gold Nissan Maxima and that "it was connected with the drug activity." Without some explanation of how the car and driver were connected to drug activity, the request to watch for the car hardly arose to the level of reasonable suspicion to believe that Rosser was engaged in ongoing criminal activity, as opposed to completed criminal activity or simply being someone with mere knowledge of the criminal activity. See Navarette v. California, 134 S. Ct. 1683, 1690 (2014) ("[A] reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot[,]' . . . as opposed to an isolated episode of criminal conduct." (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968))).

Furthermore, while pulling into a driveway just to pull out and go back down the road moments later "may be subjectively viewed as unusual, . . . that conduct [is] insufficient to corroborate the criminal activity alleged in the [be on the lookout]." See Harris, 276 Va. at 698, 668 S.E.2d at 147. As we noted above, "[l]awful conduct that the officer may subjectively view as unusual is insufficient to generate reasonable suspicion that the individual is involved in criminal activity." Id. While Deputy Davidson's training and experience must be considered in evaluating his conclusion that Rosser's driving was evasive, Rosser's behavior, when combined with the vague mention of drug activity in the alert, was insufficient to establish reasonable suspicion that he "[was], or [was] about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981). While the Commonwealth is correct in arguing that we must consider the totality of the circumstances as they reasonably appeared to Deputy Davidson, that is not the end of the analysis.

> The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process . . . must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. . . . "[This] demand for specificity in the information upon which police action is predicated *is the central teaching of this Court's Fourth Amendment jurisprudence*."

Id. at 418 (quoting Terry, 392 U.S. at 21 n.18). Here, the combination of the "be on the lookout" alert and the observations of Deputy Davidson simply did not establish a reasonable suspicion that Rosser was, or was about to be, engaged in criminal activity.

The Commonwealth also argues, citing Alston v. Commonwealth, 40 Va. App. 728, 581 S.E.2d 245 (2003), and Wallace v. Commonwealth, 32 Va. App. 497, 528 S.E.2d 739 (2000), that evasive driving, "without much more," can be sufficient to create reasonable suspicion to initiate a stop. In both of those cases, however, there was more than the two proper right turns we have here.

In Alston, officers observed a car pull into an apartment complex marked "no trespassing" and, as the car passed, one officer recognized one of the passengers as someone he knew to be under court order not to enter the complex. 40 Va. App. at 733, 581 S.E.2d at 248. After the officers turned the patrol car around to investigate, they observed the car's left blinker turn on and then the left blinker went off and the driver made a quick right turn to exit the complex. Id. at 734, 581 S.E.2d at 248. Then, "[a]lmost immediately, [the driver] pulled to the side of the road directly in front of a parked car, parked, and 'quickly' got out of the car and started walking away." Id. The officers then activated their emergency lights and asked the driver to return to the car. Id.

In Wallace, police observed Wallace traveling well below the posted speed limit. 32 Va. App. at 501, 528 S.E.2d at 740-41. Furthermore, the officer saw Wallace cross the white line on the right side of the road. Id. at 501, 528 S.E.2d at 741. The officer then turned to follow Wallace. Id. As soon as the officer got behind him, Wallace accelerated, then made a right turn without signaling or decelerating, made another turn "abrupt[ly]," again without signaling or slowing, then made a final "abrupt turn into a private driveway without using a turn signal and turned the vehicle's lights off." Id. at 501-02, 528 S.E.2d at 741. The officer then initiated a stop. Id.

In both Alston and Wallace, the totality of each officer's observations justified the stops. Here, however, the facts relied upon by the Commonwealth to support reasonable suspicion are far more scant. And, significantly, our level of deference to the trial court's factual findings is reversed. In Alston and Wallace, we reviewed the facts in the light most favorable to the Commonwealth. In contrast, our review of this Commonwealth appeal requires us to review the facts in the light most favorable to Rosser. With that as our standard, we must defer to the trial court's findings that there was nothing unusual about Rosser's driving.

Finally, the Commonwealth argues that the United State Supreme Court's recent decision in Navarette requires reversal. We disagree. In Navarette, a 911 caller reported that a truck ran her off the road. 134 S. Ct. at 1686-87. Dispatch informed an officer of the call, gave him the license plate number of the truck, and told him that the truck would be a silver Ford F150 pickup and that it was in a certain area five minutes before. Id. The officer subsequently executed a traffic stop of the truck, and the driver was arrested for possession of marijuana. Id. at 1687. The Court held that the stop complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the truck's driver was intoxicated. Id. at 1686. The Court reasoned that the caller's accurate description of the truck, the timing of the call and the stop, and the caller's use of the 911 emergency system all lent to the tip's reliability. Id. at 1688-90.

The Court emphasized that the 911 emergency system allows the police to trace and identify callers, verify important information about the caller, and record calls, which provides victims the opportunity to identify the false tipster's voice. Id. at 1689-90. What's more, the contemporaneous nature of the tip made it "especially reliable." Id. at 1689. Police spotted the truck near mile marker 69, just nineteen highway miles south of the location reported in the 911 call, at 4:00 p.m., only eighteen minutes after the 911 call. Id. Furthermore, the Court noted that the caller's report that the truck had run her off the road created reasonable suspicion that criminal activity was *ongoing*. Id. at 1690. The officer in that case was justified in initiating the stop because "allowing a drunk driver a second chance for dangerous conduct could have disastrous consequences." Id. at 1691-92. The Court noted that although the officer did not personally observe any suspicious conduct on the driver's part, reasonable suspicion was supported by the totality of the circumstances—the dangerous conduct reported by the caller and the tip's overall reliability. Id. at 1691. Despite these multiple indications of reliability,

however, the Court conceded that <u>Navarette</u> was a "close case," narrowly decided based on a close comparison of analogous cases. <u>Id.</u> at 1692.

We are unpersuaded that what the Supreme Court characterized as a "close case" warrants reversal here. <u>Navarette</u> was decided based on an anonymous tip having a higher "indicia of reliability" than the "be on the lookout" considered in this case. Although the vehicle descriptions in the two cases were essentially indistinguishable, the surrounding circumstances show stark contrast. First, unlike <u>Navarette</u>, there was no evidence that Rosser was engaged in criminal activity—let alone drug activity—by simply driving his car and making two legal right turns. The anonymous tip in <u>Navarette</u>, that the driver ran the tipster off the road, corroborated the officer's reasonable suspicion that the driver was driving while intoxicated. In contrast, Rosser did not do anything to corroborate the "be on the lookout" that he was involved in drug activity—he was neither in a geographic area known to host such activity nor engaged in conduct demonstrating a connection to such activity. Second, Deputy Davidson acted based on information given him from a "be on the lookout" alert, which had no inherent indicia of reliability. Unlike the 911 emergency system employed in <u>Navarette</u>, there is no evidence that the alert here derived from a recorded call, let alone one that could be verified, traced, or justifiably relied upon. Third, as the trial court noted in this case, the Commonwealth did not present any evidence suggesting that the "be on the lookout" and the stop were in any way contemporaneous, nor did it suggest any exigency necessitating the stop. The trial judge stated, "[W]e don't know whether this possible drug activity was taking place, whether or not it had just taken place, or was it something that was connected with the streets that's taken place a week prior or months prior, at that moment? We don't know that." Therefore, because we find the facts of <u>Navarette</u> distinguishable from those here, we disagree with the Commonwealth's contention that it mandates reversal.

III.

For the foregoing reasons, we affirm the ruling of the trial court granting the motion to suppress and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Affirmed.</u>